No. 18-1446

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
    Plaintiff/Appellant,

v.

CRST VAN EXPEDITED, INC.,
      Defendant/Appellee.

On Appeal from the United States District Court
for the Northern District of Iowa
Hon. Linda R. Reade, U.S.D.J.

## OPENING BRIEF OF THE EQUAL EMPLOYMENT
## OPPORTUNITY COMMISSION AS APPELLANT

JAMES L. LEE
Deputy General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

ANNE NOEL OCCHIALINO
Acting Assistant General
Counsel

SUSAN R. OXFORD
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Fl.
Washington, D.C. 20507
(202) 663-4791 (phone)
susan.oxford@eeoc.gov

## SUMMARY OF THE CASE

This Title VII case is primarily about whether EEOC was frivolous in seeking to remedy widespread, and often extremely severe, sexual harassment the agency discovered was occurring on long-distance trucks. The harassment allegations began with Monika Starke, who filed an EEOC charge against trucking company CRST Van Expedited alleging two CRST trainers harassed her during over-the-road training. EEOC's investigation revealed other female drivers and trainees had been harassed on the road. EEOC's suit against CRST therefore sought relief for Starke and a class of women. After CRST disclosed for the first time in discovery that it had received hundreds of complaints from female drivers and trainees—who told CRST they had been groped, subjected to lewd comments, forced to watch male co-drivers or trainers masturbate or urinate in bottles, and even raped— EEOC sought relief for each victim. EEOC lost, and we are not here to unring that bell. But the district court abused its discretion in imposing $3.3 million in attorney's fees. EEOC acted reasonably in seeking relief for these women. EEOC believes oral argument of 30 minutes per side will assist this Court in understanding why fees should be reversed.

# TABLE OF CONTENTS

Table of Contents ............................................................................. i

Table of Authorities ...................................................................... iii

Statement of Jurisdiction ............................................................... 1

Statement of the Issues ................................................................. 1

Statement of the Case .................................................................... 2

    A. Course of Proceedings ....................................................... 2

    B. Title VII's Enforcement Scheme ...................................... 3

    C. Statement of Facts ............................................................ 5

        CRST's Business Model and Anti-Harassment Policy .............. 5

        EEOC's Investigation ...................................................... 9

        EEOC's Litigation .......................................................... 12

        CRST's Fee Application .................................................. 17

    D. District Court's Decisions .............................................. 21

Standard of Review ...................................................................... 22

Summary of Argument ................................................................. 22

Argument .................................................... 26

I. EEOC's lawsuit was not frivolous, unreasonable, or without
   foundation. ............................................... 26

   A. EEOC reasonably believed it satisfied Title VII's presuit
      requirements. ........................................ 27

   B. The summary-judgment-dismissed claimants were
      non-frivolous. ....................................... 40

      1. EEOC reasonably believed all 154 claimants
         experienced actionable harassment. ............... 43

         a. Hindes, Shadden, and Shepler ................. 44

         b. Eight conceded claimants ..................... 48

      2. EEOC reasonably believed CRST was liable for
         the harassment. .................................. 50

         a. Trainer harassment ........................... 52

            i. Trainers were supervisors ................. 53

            ii. *Faragher/Ellerth* affirmative defense .... 58

         b. Co-driver harassment ......................... 69

      3. EEOC reasonably believed it could seek relief for
         claimants harassed more than 300 days before
         Starke's charge. ................................. 76

   C. EEOC had a reasonable basis for seeking to use
      the pattern-or-practice framework. ................... 81

II. *Fox v. Vice* precludes fees because CRST has not established that any fees were incurred solely in defense of a frivolous claim..... 88

    A. CRST incurred most of its fees defending EEOC's lawsuit as a whole and not any particular frivolous claimant. ..................... 89

    B. EEOC's claims are inextricably intertwined. ................................ 95

    C. CRST's fee records prevent it from establishing any work CRST did solely for a frivolous claim........................................... 102

III. Assuming arguendo any claims are frivolous, CRST would be entitled to only $128,415. ................................................. 104

Conclusion     ......................................................................... 106

Certificate of Compliance ...........................................................

Certificate of Service ...................................................................

Statutory Addendum ...................................................................

# TABLE OF AUTHORITIES

## Cases

*Anderson v. CRST Int'l, Inc.*, 685 F. App'x 524 (9th Cir. 2017) ............. 60

*Arizona v. The Geo Group, Inc.*, 816 F.3d 1189 (9th Cir. 2016) ............. 39

*Baty v. Willamette Indus., Inc.*, 172 F.3d 1232 (10th Cir. 1999) ............ 61

*Bobbitt v. Paramount Cap Mfg. Co.*, 942 F.2d 512 (8th Cir. 1991) ........ 22

*Busby v. City of Orlando*, 931 F.2d 764 (11th Cir. 1991) ........................ 34

*Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998) .................................. 52

*Catlett v. Mo. Highway & Transp. Comm'n*,
    828 F.2d 1260 (8th Cir. 1987) ............................................................ 84

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978).......... passim

*CRST Van Expedited, Inc., v. EEOC*, 136 S. Ct. 1642 (2016) ................ 20

*Efron v. Mora Dev. Corp.*, 675 F.3d 45 (1st Cir. 2012).................... 90, 105

*EEOC v. Am. Nat'l Bank*, 652 F.2d 1176 (4th Cir. 1981) ....................... 31

*EEOC v. Am. Nat'l Bank*, No. 76-26, 1979 WL 25
    (E.D. Va. June 25, 1979)..................................................................... 31

*EEOC v. Bass Pro Outdoor World, LLC*, 826 F.3d 791 (5th Cir. 2016) . 39

*EEOC v. Bruno's Rest.*, 13 F.3d 285 (9th Cir. 1993) .............................. 32

*EEOC v. CRST*, 611 F. Supp. 2d 918 (N.D. Iowa 2009) ........................ 79

*EEOC v. CRST* (*CRST I*), 679 F.3d 657 (8th Cir. 2012)................. passim

*EEOC v. Delight Wholesale, Co.*, 973 F.2d 664 (8th Cir. 1992) .............. 34

*EEOC v. Dial Corp.*, 156 F. Supp. 2d 926 (N.D. Ill. 2001) ...................... 78

*EEOC v. Dillard's Inc.*, No. 08-cv-1780,
    2011 WL 2784516 (S.D. Cal. July 14, 2011) ................................ 37, 40

*EEOC v. Dillard's Inc.*, No. 08-cv-1780,
    2012 WL 440887 (S.D. Cal. Feb. 9, 2012) ......................................... 37

*EEOC v. E. Hills Fords Sales, Inc.*, 445 F. Supp. 985 (W.D. Pa. 1978) . 36

*EEOC v. Target Corp.*, No. 02-c-146,
    2007 WL 1461298 (E.D. Wis. 2007) ................................................... 36

*EEOC v. Jillian's of Indianapolis, Ind., Inc.*,
    279 F. Supp. 2d 974 (S.D. Ind. 2003) ............................................... 37

*EEOC v. J.B. Hunt Transp., Inc.*, 75 F. App'x 853 (2d Cir. 2003).......... 34

*EEOC v. KECO Indus., Inc.*, 748 F.2d 1097 (6th Cir. 1984) .......... passim

*EEOC v. Kenneth Balk & Assocs.*, 813 F.2d 197 (8th Cir. 1987)............ 28

*EEOC v. L.B. Foster Co.*, 123 F.3d 746 (3d Cir. 1997)............................ 32

*EEOC v. Maricopa Cty*, 339 F. App'x 688 (9th Cir. 2009) ...................... 34

*EEOC v. Outback Steakhouse of Fla., Inc.*,
    520 F. Supp. 2d 1250 (D. Colo. 2007)........................................... 37, 40

*EEOC v. Rhone-Poulenc, Inc.*, 876 F.2d 16 (3d Cir. 1989)...................... 31

*EEOC v. Scolari Warehouse Mkts., Inc.*,
    488 F. Supp. 2d 1117 (D. Nev. 2007) ................................................ 78

*EEOC v. Sterling Jewelers Inc.*, 801 F.3d 96 (2d Cir. 2015)................... 39

*EEOC v. United Parcel Serv.*, 94 F.3d 314 (7th Cir. 1996).....................31

*EEOC v. United Parcel Serv.*, 860 F.2d 372 (10th Cir. 1988)................32

*Harris v. Maricopa Cnty. Supr. Ct.*, 631 F.3d 963 (9th Cir. 2011).........91

*Ellison v. Brady*, 924 F.2d 872 (9th Cir. 1991)......................................59

*Engel v. Rapid City Sch. Dist.*, 506 F.3d 1118 (8th Cir. 2007)....... passim

*Erickson v. Wis. Dep't of Corr.*, 469 F.3d 600 (7th Cir. 2006)................70

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) .................... passim

*Fuller v. City of Oakland*, 47 F.3d 1522 (9th Cir. 1995) ........................59

*Fox v. Vice*, 563 U.S. 826 (2011)...................................................... passim

*General Tel. Co. of the N.W., Inc. v. EEOC*, 446 U.S. 318 (1980)... passim

*Hathaway v. Runyon*, 132 F.3d 1214 (8th Cir. 1997) ............................43

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ..................................... passim

*Hughes v. Rowe*, 449 U.S. 5 (1980) ......................................................86

*Intlekofer v. Turnage*, 973 F.2d 773 (9th Cir. 1992)..............................61

*Isaacs v. Hill's Pet Nutrition, Inc.*, 485 F.3d 383 (7th Cir. 2007) ..........77

*Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287 (8th Cir. 1997) ..............77

*Joens v. John Morrell & Co.*, 354 F.3d 938 (8th Cir. 2004) ...................57

*Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645 (2015) ..................... passim

*Merritt v. Albemarle Corp.*, 496 F.3d 880 (8th Cir. 2007)......................53

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)............ 43, 76

*Obin v. Dist. No. 9, Int'l Ass'n of Machinists*,
    651 F.2d 574 (8th Cir. 1981) ............................................................ 84

*Sandoval v. Am. Bldg. Maint. Indus.*,
    578 F.3d 787 (8th Cir. 2009) ....................................................... 52

*Sellars v. CRST Expedited, Inc.*, 321 F.R.D. 578 (N.D. Iowa 2017)....... 72

*Serrano v. Cintas Corp.*, 699 F.3d 884 (6th Cir. 2012) .............. 38, 48, 80

*Sturgill v. United Parcel Serv., Inc.*, 512 F.3d 1024 (8th Cir. 2008) ...... 22

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ................................ 80

*Vance v. Ball State University*, 570 U.S. 421 (2013)........................ 57, 58

*Williams v. City of Carl Junction*, 523 F.3d 841 (8th Cir. 2008)............ 87

**Statutes**

28 U.S.C. § 1291.................................................................................... 1

28 U.S.C. § 1331.................................................................................... 1

42 U.S.C. § 2000e-2(a)(1)...................................................................... 3

42 U.S.C. § 2000e-5............................................................................... 2

42 U.S.C. § 2000e-5(b) ................................................................. passim

42 U.S.C. § 2000e-5(f)(1)................................................................. 4, 29

42 U.S.C. § 2000e-5(k) ................................................................. passim

**Guidelines**

29 C.F.R. § 1604.11(d) .................................................................. 70

# STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331. The court dismissed the case with prejudice based on the parties' settlement and entered final judgment on February 8, 2013. R.380, 381. On December 27, 2017, the court issued its amended fee award and entered judgment. Addendum(A-)133,A-141. EEOC filed a notice of appeal on February 23, 2018. Appendix Volume XXII (XXII-Apx.)5827. This Court has jurisdiction under 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUES

1. Did the district court abuse its discretion in imposing fees because EEOC was not frivolous in seeking relief for a class of female truck drivers sexually harassed by male trainers and co-drivers?

42 U.S.C. § 2000e-5(k)

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978)

2. Even if some of these sexual harassment claims were frivolous under *Christiansburg*, did the court abuse its discretion in awarding fees that CRST would have incurred anyway to defend against EEOC's non-frivolous claims?

*Fox v. Vice*, 563 U.S. 826 (2011)

3.  If some fees were proper, did the court wrongly award fees that were not "reasonable"?

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)

## STATEMENT OF THE CASE

### A.  Course of Proceedings

This is the third appeal of the Equal Employment Opportunity Commission (EEOC) from the district court's imposition of attorneys' fees.  EEOC sued CRST in September 2007 under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5.  I-Apx.6.  The complaint alleged that since at least July 2005, CRST failed to protect Monika Starke and "a class of similarly situated female employees" from workplace sexual harassment by failing to prevent and remedy the hostile work environment caused by "lead drivers" (trainers) or "team drivers" (co-drivers).  I-Apx.40-42 (Amended Complaint).

In discovery, EEOC identified over 250 class members; the court allowed 155 as claimants.  After briefing, the court dismissed them all—including sixty-seven claimants the court found, or CRST conceded, had trial-worthy claims—and imposed fees on EEOC.  On appeal, this Court vacated fees without prejudice after reversing and remanding for two

claimants. After EEOC settled for one and dismissed the other, the district court made a global finding that EEOC's entire case was frivolous and re-imposed fees. Again, this Court vacated, reversing some fees entirely and remanding the rest for reconsideration.

After further briefing, the district court imposed fees for a third time ($3.3 million), ruling all but fourteen of EEOC's claimants wholly or partially frivolous. This appeal followed.

## B. Title VII's Enforcement Scheme

Title VII prohibits employment discrimination based on sex. 42 U.S.C. § 2000e-2(a)(1). Congress tasked EEOC with enforcing this protection through "a detailed, multi-step procedure" that usually begins when, as here, an employee files a charge with EEOC alleging a Title VII violation. 42 U.S.C. § 2000e-5(b); *see Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1649 (2015).

Title VII requires EEOC to investigate the charge, determine if there is "reasonable cause to believe that the charge is true," and, if so, to "endeavor to eliminate" the discriminatory practice "by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b); *EEOC v. CRST Van Expedited, Inc.* (*CRST I*), 679 F.3d 657, 672 (8th Cir. 2012). If EEOC is unable to resolve the matter through

conciliation, EEOC "may bring a civil action" against the employer.  42

U.S.C. § 2000e-5(f)(1).

Title VII does not specify how EEOC is to investigate or conciliate.

*See* 42 U.S.C. § 2000e-5(b).  The Supreme Court recently held that

courts may review EEOC conciliations, but only to determine whether

EEOC told the respondent employer "what the employer has done and

which employees (or what class of employees) have suffered as a result"

and offered the employer "an opportunity to remedy the allegedly

discriminatory practice." *Mach Mining*, 135 U.S. at 1654, 1656.

Congress left it to EEOC to decide how to conduct its investigations and

conciliations and whether to enter into a conciliation agreement or to

file a lawsuit to enforce Title VII's protections. *Id.* at 1654.

EEOC has the authority to, and often does, ask an employer

during an individual investigation whether other employees have

complained about the same discrimination.  If EEOC finds reasonable

cause to believe discrimination occurred against other individuals and

conciliation is unsuccessful, Title VII permits EEOC to file a lawsuit

seeking relief for victims in addition to the charging party. *Gen. Tel.*

*Co. of the Nw., Inc. v. EEOC* 446 U.S. 318, 331 (1980).  Such suits

frequently seek relief for groups or classes of individuals (including victims not identified during the investigation) such as all "female employees" adversely affected by specified policies, *id.* at 324, or "a class of women who … applied" for particular positions, *Mach Mining*, 135 S. Ct. at 1650. As the Supreme Court explained in *General Telephone*, "EEOC need look no further than [42 U.S.C. § 2000e-5] for its authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals." 446 U.S. at 324.

## C. Statement of Facts

*CRST's Business Model and Anti-Harassment Policy*

CRST employs over 2,500 drivers in a team-driving system where two drivers alternate between sleeping and driving, allowing CRST's trucks to stay on the road for up to 22 hours per day and to deliver loads faster than competitors. But the system requires CRST's two-person teams to live and work together for up to twenty-one-day stretches in the close confines of a truck cab, consisting of two front seats and a small berth area with two bunk beds. *CRST I*, 679 F.3d at 665; XVIII-Apx.5019.

CRST provides new drivers with a few days of classroom orientation followed by 28 days of over-the-road training with an

experienced driver (known as a lead driver or trainer). *Id.* At the end of that training period, the trainer gives the trainee a "pass/fail driving evaluation." *Id.* CRST generally accepted a trainer's "pass" assessment without further examination and promoted the trainee to a permanent job as a co-driver, a position that earns a higher rate of pay. XVII-Apx.4726; IV-Apx.1101. Record evidence showed that dispatchers sometimes extended a trainee's training period beyond 28 days based solely on a trainer's statement that more training was needed. *See infra* at pp. 55-56 (discussing Jenna Fowler-Allen).

Between January 2005 and October 15, 2008, CRST received at least 182 internal complaints that male drivers had sexually harassed their female trainees and co-drivers—a rate of nearly one complaint per week. IV-Apx.1077-78. CRST received an unknown number of additional complaints that, for various reasons, it failed to document. IV-Apx.1082. Some of this harassment was extreme. For example, dozens of women alleged rape or other sexual assault by a male trainer or co-driver. IV-Apx.1084-87.

CRST had a policy prohibiting sexual harassment. IV-Apx.1197-1200; XVII-Apx.4594. It required drivers to report harassment to their

dispatcher (whom CRST considered a driver's supervisor) or CRST's Human Resources (HR) Department. *Id*. The policy required dispatchers to refer all complaints to HR. *Id*. And the policy provided that harassers, as well as dispatchers who failed to refer a report of harassment to HR, could be disciplined with any combination of "written warning; probation; suspension; [or] termination[,] depending on the investigation findings and severity of the behavior." IV-Apx.1198-99. Although the record shows that dispatchers sometimes failed to refer harassment complaints to HR as required, *see* XVIII-Apx.4801, no CRST dispatcher has been terminated or had their career jeopardized because of the way they handled a sex harassment complaint. IV-Apx.1118.

Two members of CRST's HR department handled complaints. XVII-Apx.4550-51. Director Jim Barnes arrived in March 2005 after some turnover in the office. *Id*. Lisa Oetken worked in HR as a college intern until she graduated in December 2004, when CRST hired her. XVII-Apx.4658. Which one of them handled a harassment investigation did not turn on the severity of the alleged harassment. XVII-Apx.4663. Rather, it was happenstance—whoever was in the office handled it. *Id*.

In any event, investigations were minimal: Oetken explained that "it doesn't matter if what they [the women] are saying is the truth or not. We separate them, and they are no longer subject to the harassment." XVII-Apx.4665.

Barnes and Oetken documented complaints and CRST's responses, in chronological order, on a "Positive Work Environment Communication" (PWE) chart. XVII-Apx.4555; A-154-56. The PWE chart shows that CRST's two predominant responses were either to give the accused harasser a verbal warning (recorded as "vw"), or simply to document the complaint (recorded as "df" for "documented findings"). A-154-56. Any verbal warning consisted of telling the accused that *if* he did anything wrong, he should not do it again. XVII-Apx.4664. CRST also responded to some harassment complaints by imposing a temporary, six-month ban on driving with women (recorded as "nf" for "no females"). A-154-56. When the managers of CRST's new-driver-training program selected drivers to be "lead drivers," however, they were not required to check HR records to determine whether a candidate had a history of sexual harassment before assigning him to train women. IV-Apx.1102 ¶ 301.

CRST identified only two male drivers terminated for harassment during this forty-six-month timeframe. IV-Appx.1121. The PWE chart shows additional terminations ("t"), but CRST's personnel records established that CRST fired these men for other infractions. IV-Apx.1115-16. No male driver was placed on probation, suspended, removed from the lead-driver program, or otherwise disciplined for harassment.

*EEOC's Investigation*

In December 2005, former CRST trainee Monika Starke filed a charge with EEOC alleging that in mid-2005, two different CRST trainers harassed her during over-the-road training. VI-Apx.1634. She alleged the first trainer constantly made sexual remarks but when she complained to her dispatcher, he said she "could not get off the truck until the next day." *Id*. Starke alleged that her second trainer forced her to have unwanted sex to receive a passing evaluation. *Id*.

EEOC investigated Starke's allegations and sought to determine whether other female drivers experienced similar treatment. In a letter accompanying EEOC's notice of the charge to CRST, EEOC asked whether, between January 2005 and November 2005, "any other

individual ha[d] complained to any supervisor or manager concerning the conduct described in the [c]harge," directing CRST to identify each such complainant and provide documentation about the complaint. VI-Apx.1636-38. Discovery later revealed that CRST's files contained dozens of harassment complaints received during the relevant timeframe. A-154. CRST's responding letter identified only two. Apx.1638-40.

EEOC's investigation nevertheless uncovered some of the other women who had complained to CRST about sexual harassment. EEOC's investigator expressed concern to HR Director Barnes about the "number of complaints" and, particularly, about the number of female trainees who alleged trainers were demanding sex in exchange for passing grades. V-Apx.1259. CRST responded that the number of complaints was "actually quite minimal" given the size of CRST's workforce, and assured EEOC that CRST "promptly investigate[d] allegations of harassment and mete[d] out appropriate discipline." V-Apx.1259-60.

EEOC completed its investigation and sent CRST a letter stating that EEOC had found reasonable cause to believe CRST had subjected

Starke and "a class of employees and prospective employees to sexual harassment, in violation of Title VII." VI-Apx.1629-30. The letter invited CRST to conciliate. VI-Apx.1630. EEOC's investigator and CRST's attorney thereafter discussed possible terms of a voluntary settlement agreement. VI-Apx.1617-18. CRST's attorney requested "more information regarding the class" of female drivers for whom EEOC sought relief. VI-Apx.1618. EEOC's investigator said she could not provide "names of all class members at that time" or "an indication of the size of the class," but offered a process for identifying harassment victims "so settlements could be paid to them."[1] *Id.*

CRST's counsel did not object to EEOC's proposed procedure or seek further information about the class. Instead, he notified EEOC that CRST was ending conciliation efforts because CRST believed, based on the monetary demand made by Starke's private attorney in separate negotiations, that the matter could not be resolved. VI-Apx.1618-21.

---

[1] Conciliation communications ordinarily are confidential. 42 U.S.C. § 2000e-5(b); *Mach Mining*, 135 S. Ct. at 1655. Here, the district court permitted inquiry into the conciliation process, so the conciliation communications are part of the record.

*EEOC's Litigation*

EEOC filed this lawsuit in September 2007. I-Apx.6. Under the court's discovery schedule, the parties exchanged initial disclosures in February 2008, at which time EEOC identified eighteen claimants besides Starke. *See* VI-Apx.1607. Before that, however—knowing only Starke's identity—CRST incurred five months of legal expenses.

CRST's billing records for these first five months show, *inter alia*, that its attorneys spent approximately 100 hours creating and updating a "master spreadsheet" of "driver complaints," and compiling trainee and co-driver complaint documents. XIX-Apx.5096-145. CRST's initial disclosures, however, omitted any information or records concerning any complaint other than Starke's. *See* IV-Apx.1146-52.

EEOC learned of additional claimants through discovery and provided their names to CRST (*see* VI-Apx.1606-07); CRST raised no objection. In August 2008, however—by which time EEOC had identified forty-nine class members—CRST complained to the court about EEOC's pace. At CRST's request, the court imposed an October 15, 2008, deadline for identifying all claimants. I-Apx.52-54.

EEOC served a discovery request on CRST, due September 15, for all CRST internal harassment complaint files (*see* III-Apx.754-55), information CRST's attorneys had started compiling at least six months earlier. *See, e.g.*, XIX-Apx.5137-43. On September 29, 2008—two weeks *after* the response was due, and only two weeks before EEOC's deadline for identifying all claimants—CRST provided its internal records of harassment complaints dating back to January 2005. III-Apx.756. Until then, EEOC was unaware how many sexual harassment complaints CRST had documented. The volume was even more unexpected because, as noted, during EEOC's investigation, EEOC asked CRST who else had complained about harassment during part of this timeframe, and CRST had identified only two complaints. *CRST I*, 679 F.3d at 695-97 (Murphy, J., dissenting) (noting CRST provided EEOC with "incomplete information" in response to EEOC's investigation inquiry about other victims); VI-Apx.1636-40.

EEOC ultimately identified over 250 claimants, primarily using CRST's own belatedly-disclosed internal complaint files. *See* XVIII-Apx.4762-64. The court subsequently barred EEOC from seeking relief

for anyone not produced for deposition.  I-Apx.63.  EEOC produced 155

women.  XVIII-Apx.4764.

EEOC's claimants alleged harassment by many different men

between January 2005 and October 15, 2008.  Their allegations,

however, reflect common patterns of conduct.  For example:

- 49 women were sexually assaulted.  IV-Apx.1084-87.

- 54 women were subjected to offensive sex-based touching. IV-Apx.1087-90.

- 73 women were propositioned for sex.  IV-Apx.1090-95.

- 24 women alleged male drivers forced them off the truck or threatened to do so.  IV-Apx.1095-96.

The deposition testimony from a sampling of these women

illustrates the type of conduct at issue:

- Deborah Carey testified that "ten of her fourteen co-drivers sexually harassed her," including by "fondl[ing] her while she was sleeping" and by abandoning her at a truck stop after she rebuffed a sexual advance. *See* XVIII-Apx.4920.  Carey "complained about some of this conduct early on to no avail." *Id.*

- Kelli Carney was harassed by three drivers, including one who "forced sex upon [her]" multiple times and said "he would kill [her]" if she reported him.  VIII-Apx.2144-45.  Carney reported the rapes to HR, VIII-Apx.2145, but her complaint does not appear in CRST's files.

14

- Tequila Jackson's trainer said "he was going to rape [her]." XI-Apx.2956-57. Jackson called a dispatcher to report the threatening behavior as it was occurring on a Friday evening, but the dispatcher told her that she would have to stay on the truck "until Monday morning." XI-Apx.2958. The trainer received a verbal warning. A-154.

- Shalitha Ross woke up with her co-driver on top of her, fondling her breast. XIII-Apx.3621-22. She complained to a dispatcher, who said he would get her off the truck but then sent them on another run instead. XIII-Apx.3623-26. HR later told her "it would get taken care of," XIII-Apx.3632-33. The co-driver received a verbal warning. A-154.

- Gloria South's trainer raped her repeatedly and prevented her from reporting him. XV-Apx.4064-71. She was eventually able to get off the truck and report the rapes to HR Director Barnes, who assured her the trainer would be fired. XV-Apx.4072-73. In fact, he merely received a verbal warning and a temporary "no females" designation. A-155.

- Tameisha Wilson testified that a co-driver "constantly propositioned [her] for sexual intercourse," "tried to grab her breasts every night," "tried to jump on top of her," punched her in the jaw," and "tried to choke her." XVI-Apx.4477-79. Wilson complained to her dispatcher, who "refused to help" and told her to "try to stick it out." XVI-Apx.4475-76, 4481.

On the deadline for filing dispositive motions, CRST filed seven summary judgment motions. *See* I-Apx.16-17. Nowhere did CRST assert that EEOC had failed to satisfy Title VII's presuit requirements.

XVIII-Apx.4756 n.2. Rather, CRST sought dismissal of EEOC's "pattern-or-practice claim," R.150, and in six other motions sought summary judgment on 121 claimants. R.144-49; *see* A-142-45. CRST did not seek summary judgment as to thirty-four claimants, meaning it expected them to go to trial. *See* A-142-45. The court denied summary judgment for another thirty-four claimants, *id.*, leaving a total of sixty-eight EEOC claimants with trial-worthy allegations.[2]

In its first summary judgment ruling, the court held EEOC failed to establish a pattern-or-practice of discrimination and that trainers were not supervisors. XVIII-Apx.4752-818. In a footnote, the court observed that CRST had not complained that EEOC "failed to conciliate the allegations of Ms. Starke *or anyone else*." XVIII-Apx.4756 n.2 (emphasis added). Eight days later, CRST moved for leave to brief the adequacy of EEOC's presuit efforts. R.217 (filed 5/8/09) (*see* I-Apx.24). Although well past the court-imposed deadline for filing dispositive motions, the court granted CRST's request. VI-Apx.1615, 1625.

---

[2] That number became sixty-seven after Gwen Allen, one of the claimants for whom the court denied summary judgment (XVIII-Apx.4935), decided not to participate. A-10 n.6.

The district court thereafter held, in six separate decisions, that judicial estoppel prevented EEOC from seeking relief for some women, XVIII-Apx.4845-59, and that EEOC failed to allege actionable harassment with respect to others, XVIII-Apx.4860-935.  The court then barred EEOC from seeking relief for the remaining sixty-seven claimants with otherwise-trial-worthy claims because "EEOC did not investigate, issue a reasonable cause determination or conciliate the claims of [these] 67" women, and dismissed EEOC's lawsuit in its entirety.  XVIII-Apx.4936-75.

*CRST's Fee Applications*

CRST moved for attorneys' fees under Title VII's fee-shifting provision, 42 U.S.C. § 2000e-5(k), which requires (for a prevailing defendant) a finding that EEOC's action was frivolous, unreasonable, or without foundation.  The court ruled EEOC's lawsuit unreasonable for not satisfying Title VII's presuit requirements and imposed attorneys' fees and expenses of $4,467,442.90 on EEOC.  XVIII-Apx.4990-93, 5016.[3]

---

[3] The clerk of the court imposed an additional $92,842.20 in costs. XVIII-Apx.4983.

EEOC appealed the dismissal and imposition of fees and expenses.

XVII-Apx.4730-31.  Over a dissent from Judge Murphy, this Court

affirmed the district court's rulings that EEOC failed to satisfy Title

VII's pre-suit requirements for the sixty-seven trial-worthy claimants

dismissed on that basis and affirmed that lead drivers are not

supervisors.  XVIII-Apx.5023-26, 5031-32, 5038-40 (*CRST I*).  This

Court reversed dismissal regarding two individuals, holding that

judicial estoppel did not bar EEOC from seeking relief for Starke and

that Tillie Jones's harassment was sufficiently severe to be actionable.

XVIII-Apx.5029-30, 5033-34.  This Court then unanimously vacated

(without prejudice) the district court's award of fees and expenses,

explaining CRST was "no longer a 'prevailing' defendant."  XVIII-5037-

38.

On remand, EEOC notified the district court it no longer sought

relief for Jones, who fell within the "presuit-requirements" ruling.  A-12.

CRST agreed to pay $50,000 to Starke to settle EEOC's lawsuit, *id.*, and

the court dismissed the case on that basis and re-imposed

approximately $4.7 million in fees and costs.  A-13-41.  In addition to

relying on EEOC's alleged presuit failures, the court added that

"EEOC's pattern-or-practice claim was unreasonable" and "[t]he remaining claims that the court dismissed on summary judgment were likewise unreasonable or groundless." A-24-27. The award included fees CRST incurred defending EEOC's first appeal. A-33-36.

Again, EEOC appealed. I-Apx.39. This Court—affirming, reversing, and vacating in part—remanded for further proceedings. *EEOC v. CRST Van Expedited* (*CRST II*), 774 F.3d 1169 (8th Cir. 2014), vacated June 28, 2016 (XIX-Apx.5071-73). This Court ruled no fees could be awarded "based on a purported pattern-or-practice claim" (because there was none) or failure to satisfy presuit requirements (because it was not a ruling on the merits). XIX-Apx.5049-50. The Court remanded for the district court to make individualized findings of frivolousness for each claimant and, if any were frivolous, to identify what fees CRST incurred solely for those claims. XIX-Apx.5051-54.

In additional briefing the district court ordered (*see* XIX-Apx.5057-59), CRST acknowledged that its fee records do not identify what fees it incurred for any particular claimant(s). XXI-Apx.5659, 5664-65, 5672. Arguing that EEOC's summary judgment claimants were all frivolous, CRST proposed a per-claimant average derived by dividing the total

fees previously awarded (minus a few disallowed categories) by 152 claims.  XXI-Apx.5660-61, 5673.  EEOC opposed the per-claimant average as inconsistent with this Court's remand instructions and with *Fox v. Vice*, 563 U.S. 826 (2011).  R.423 at 1-14.

Meanwhile, CRST petitioned for, and the Supreme Court granted review of, this Court's rule barring Title VII fee awards for non-merits dismissals.  XIX-Apx.5060-62.  The Supreme Court ultimately held that, to be a "prevailing party," "a defendant need not obtain a favorable judgment on the merits." *CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1646, 1651-53 (2016) (XIX-Apx.5063-70).  The Supreme Court did not address whether fees should nonetheless be denied here because EEOC had reasonably believed it satisfied its presuit requirements. XIX-Apx.5069-70.  This Court then vacated its 2014 decision and remanded to the district court.  *See* R.450 (Order); R.451 (Judgment); R.452 (Mandate), XIX-Apx.5071-73.

The district court limited additional briefing to the Supreme Court-remanded issues (which are not at issue here).  R.453.  The court refused EEOC's request for further briefing on presuit requirements, stating it had already determined EEOC's conduct was frivolous.  *Id.* at 3 n.2.

## D. District Court's Decisions

On September 22, 2017, the court awarded CRST $1.86 million for the seventy-one claims dismissed on summary judgment that the court found wholly or partially frivolous based on its "particularized findings."[4]  A-113-14, A-119-23.  The court added $128,414.50 for the claims dismissed based on presuit requirements—the amount CRST told the court (in 2015) it incurred briefing and arguing that issue.[5]  A-121-22.

The court explained that the award was "not based on mathematical precision" but represented "rough justice" and a "flexible and commonsense application of the *Fox* [*v. Vice*, 563 U.S. 826 (2011),] standard in light of the realities of the case, how it was litigated and the court's unique understand[ing] of these proceedings."  A-123.

CRST moved for additional fees for claimants dismissed on summary judgment and based on presuit requirements, arguing the

---

[4]  The court denied appellate fees, A-121, and supplemental fees incurred after October 2009, XXI-Apx.5684.  CRST appealed neither decision.

[5] XXI-Apx.5666.  CRST calculated this amount after this Court ruled in *CRST II* that CRST could not recover any fees for the presuit requirements issue.  XIX-Apx.5051.

current award undervalued the time CRST spent on both groups of claimants.  XXI-Apx.5696.  The court agreed, adopted CRST's revised calculations of per-claimant average fees incurred, and increased the award to $3,317,289.67.  A-136-40.

## STANDARD OF REVIEW

This Court reviews *de novo* legal issues related to an award of attorneys' fees under Title VII.  *Sturgill v. United Parcel Serv., Inc.*, 512 F.3d 1024, 1036 (8th Cir. 2008).  This Court reverses a fee award to a prevailing Title VII defendant "upon a showing of abuse of discretion or an error in [the court's] application of the governing legal standards."  *Bobbitt v. Paramount Cap Mfg. Co.*, 942 F.2d 512, 514 (8th Cir. 1991).

## SUMMARY OF ARGUMENT

While investigating one woman's charge of sexual harassment that CRST failed to prevent or correct, EEOC learned of other victims and sued CRST seeking relief for them.  Discovery revealed three things.  During an almost-four-year period, as many as 250 women had experienced a wide range of harassment, including sexual assault and rape.  Many complained to CRST.  Regardless of severity, CRST's response was largely the same:  to separate the two drivers and issue a

verbal warning, sometimes accompanied by a temporary six-month restriction on driving with women; or simply to document the complaint.

EEOC argued CRST did not do enough to prevent and remedy harassment. EEOC lost. But EEOC reasonably believed each of its claimants experienced actionable harassment for which a jury could find CRST liable based on its negligent response. The court abused its discretion in imposing fees under 42 U.S.C. § 2000e-5(k), for three reasons.

First, none of EEOC's claims were frivolous, unreasonable, or without foundation. *Christiansburg*, 434 U.S. at 421-22. The court imposed fees for EEOC's failure to satisfy statutory presuit requirements for sixty-nine claimants with otherwise-trial-worthy claims. EEOC was reasonable to believe it had satisfied those requirements, however, as Judge Murphy explained in her vigorous dissent on this point in the first appeal. EEOC's interpretation of presuit requirements is supported by Title VII's language and purpose; Supreme Court precedent preceding and following EEOC's suit; CRST's litigation conduct; and decisions of other circuits, both before and since.

The court also erred as a matter of law, and so necessarily abused its discretion, in finding frivolous seventy-one claimants dismissed on summary judgment. The court erroneously carved up some claimants' harassment allegations by harasser instead of considering whether the claimants' entire work environment was infected with harassment, as the Supreme Court and this Court require.

The court further abused its discretion in finding frivolous EEOC's argument that CRST could be held liable for failing to respond more rigorously to harassment complaints. EEOC reasonably argued that given CRST's knowledge that women were registering, on average, one complaint per week for almost four years, CRST's standard, non-punitive response was not sending a message of deterrence.

And the court erred in finding EEOC's inclusion of some claimants based on the pattern-or-practice method of proof frivolous on the ground that EEOC's complaint did not include a pattern-or-practice "claim." To the contrary, EEOC is not required to identify a method of proof in its complaint.

Second, even if some of EEOC's claimants *were* frivolous, the court abused its discretion in imposing fees because CRST failed to meet its

burden under *Fox v. Vice* and *Hensley v. Eckerhart* to demonstrate what fees, if any, it incurred exclusively defending against a frivolous claim. CRST admitted it lacked fee records to meet its burden. Instead, the court—over EEOC's objection—calculated one per-claimant-average fee for presuit-dismissed claimants and another for summary-judgment-dismissed claimants. The resulting pro-rata fees impermissibly encompass substantial legal work that responded to EEOC's lawsuit as a whole rather than to any particular claimant(s).

A more refined calculation would be equally unavailing, however. Under EEOC's theory of liability, these claims were all inextricably intertwined. An employer's liability under Title VII for failing to respond appropriately to harassment depends on whether its response was likely to be effective. EEOC reasonably contended that a jury could find CRST liable under Title VII for failing to alter its response over time despite knowing, based on the steady stream of complaints it was receiving, that its response was doing nothing to deter harassment. Establishing the facts that underlay this legal theory necessarily drew on the experiences and testimony of all 154 claimants to establish what CRST knew and that its response failed to abate harassment.

Finally, even if some of EEOC's claimants were frivolous, the maximum fees to which CRST would be entitled is $128,414.50.  This is the amount CRST told the district court it incurred to obtain dismissal based on presuit requirements.  By April 2008—well before CRST incurred most of the fees the court awarded here—CRST knew all the facts it needed to prepare and file the presuits requirements motion.  It unreasonably failed to do so until May 2009.  Fees CRST incurred before April 2008 are non-compensable under *Fox* because they relate to EEOC's sixteen non-frivolous claimants or to EEOC's lawsuit as a whole.

## ARGUMENT

## I. EEOC's lawsuit was not frivolous, unreasonable, or without foundation.

The district court abused its discretion in awarding fees to CRST, because EEOC's lawsuit was reasonable and well-grounded in legal precedent and record facts.  Congress gave district courts discretion to award the prevailing party in a Title VII action "a reasonable attorney's fee" as part of the costs.  42 U.S.C. § 2000e-5(k).  A court's discretion, however, is limited.  Unlike for a prevailing plaintiff, who is ordinarily entitled to fees, a court may impose fees on a *losing* plaintiff only if "the

plaintiff's action was frivolous, unreasonable, or without foundation."

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978).

Courts applying this standard must "resist the understandable temptation to engage in *post hoc* reasoning" and find an action "unreasonable or without foundation" merely because a plaintiff ultimately did not prevail. *Id.* at 421-22. As the Court explained:

> This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. … [N]o matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial.

*Christiansburg*, 434 U.S. at 422.

## A. EEOC reasonably believed it satisfied Title VII's presuit requirements.

Almost half of the more than $3.3 million in fees the district court awarded CRST—$1,518,297.71—was for sixty-nine "claims dismissed for failure to comply with presuit requirements." A-138-139.[6] The court

_____

[6] The sixty-nine claims include sixty-four of the sixty-seven women in the court's August 2009 presuit order, XVIII-Apx.4974-75 (excluding three intervenors who later settled with CRST), plus T.Jones (whom this Court added, XVIII-Apx.5033-34), and four women affirmed by this Court on the alternate ground of failure to complete presuit requirements: B.Batyik, B.Broeker, V.McIver, and D.Vance. XVIII-Apx.5034.

abused its discretion.  These women alleged harassment that the court found or presumed to be trial-worthy.  Many endured sexual assault, threatened assault, or rape.  For almost half (thirty-four), CRST never even sought summary judgment.  A-142-145.  The court denied summary judgment for the other half, *see id.*, ruling a jury could find CRST liable under Title VII.

Despite this potential merit, the court later ruled EEOC could not seek relief for these women because EEOC did not discover them during the administrative process and investigate each woman's individual harassment allegations before filing suit.  Two judges of this Court later agreed.  XVIII-Apx.5023-26.  In a vigorous dissent, however, Judge Murphy correctly described the majority's ruling as imposing "a *new* requirement" and "*unprecedented* obligations" that effectively rewarded CRST for withholding information from EEOC during the investigation.  XVIII-Apx.5038-39 (emphasis added).  This dissent counsels strongly against fees here.

A plaintiff's Title VII action is unreasonable—and thus amenable to fees—only when there is no basis for it.  *See EEOC v. Kenneth Balk & Assoc.*, 813 F.2d 197, 198 (8th Cir. 1987) (reversing fees because

EEOC's suit had "some basis").  EEOC sought judicial relief for multiple

individuals in a single lawsuit.  On three grounds, EEOC reasonably

believed it had satisfied Title VII's presuit requirements for including

victims identified after suit was filed: the language and purpose of Title

VII; Supreme Court precedent; and decisions of other circuits.

Subsequent judicial decisions further reinforce the reasonableness of

EEOC's 2007 belief.

First, the process EEOC followed here is consistent with Title

VII's mandate.  Title VII requires EEOC to investigate charges of

discrimination and—if EEOC finds reasonable cause to believe there

was discrimination—to attempt conciliation.  42 U.S.C. § 2000e-5(b).

Where (as here) conciliation fails, Title VII authorizes EEOC to file suit

and obtain relief for victims.  42 U.S.C. § 2000e-5(f)(1).  Congress did

not include any particular requirements for how EEOC investigates or

conciliates, leaving the specifics to EEOC's discretion.  *EEOC v. KECO

Indus., Inc.*, 748 F.2d 1097, 1100 (6th Cir. 1984).

Second, Supreme Court precedent also supported EEOC's 2007

view.  In *General Telephone*, the Supreme Court stated that "EEOC

need look no further than [§ 2000e-5] for its authority to bring suit in its

own name for the purpose … of securing relief for a group of aggrieved individuals."  446 U.S. 318, 323-34 (1980).  The Court allowed EEOC to seek relief for a "class of individuals" consisting of "female employees in General Telephone's facilities" in four states who had experienced discrimination in maternity leave restrictions, access to craft jobs, and promotion.  *Id.* at 321, 323 n.5.  The decision contains no suggestion that EEOC, having investigated these unlawful practices and identified the class of women affected by them, either had investigated—or was required to investigate—each claimant individually during the administrative process.

Third, when EEOC filed this lawsuit, other circuits had expressly allowed EEOC to seek relief for claimants identified only after suit was filed, and this Court had never ruled to the contrary.  Indeed, until this Court's 2012 decision in this case, no circuit (including this Court) had applied the requirements that EEOC identify each *claimant* in its reasonable cause finding and offer conciliation as to each.  Instead, as Judge Murphy observed in her dissent, circuit courts had uniformly held that the sufficiency of EEOC investigations were "beyond the scope of judicial review" and "that the EEOC need *not* separately conciliate

individual class members when pursuing" class-based discrimination claims.  *See* XVIII-Apx.5038 (emphasis added; citing *KECO*, 748 F.2d at 1100-01 (sex class claim)).

The Fourth Circuit, for example, upheld EEOC's right to identify claimants in discovery in a class case of race discrimination in hiring, *EEOC v. American National Bank*, 652 F.2d 1176 (4th Cir. 1981).  The district court had barred EEOC from seeking relief for fifty-one claimants EEOC identified after filing suit.  No. 76-26-N, 1979 WL 25, at *83 (E.D. Va. June 25, 1979).  The Fourth Circuit reversed.  Because EEOC alleged these claimants had experienced the same discriminatory practice EEOC had investigated at another bank branch, the court allowed EEOC to seek relief for them.  652 F.2d at 1184-86.

The Sixth Circuit, in a Title VII claim of class-wide gender discrimination, and the Third Circuit, in an ADEA class case, had reached the same conclusion in cases Judge Murphy cited in her dissent.  *See* XVIII-Apx.5038-39 (*citing KECO*, 748 F.2d 1097; *EEOC v. Rhone-Poulenc, Inc.*, 876 F.2d 16, 17 (3d Cir. 1989), *aff'g o.b.* 677 F. Supp. 264, 266 (D.N.J. 1988)).  The Seventh and Tenth Circuits were in accord.  *See EEOC v. United Parcel Serv.*, 94 F.3d 314, 318 (7th Cir.

1996) (recognizing EEOC's ability "to bring an action on behalf of a class of unidentified individuals"); *EEOC v. United Parcel Serv.*, 860 F.2d 372, 374 (10th Cir. 1988) (EEOC could challenge discriminatory policy affecting unidentified members of a defined class); *cf. EEOC v. Bruno's Rest.*, 13 F.3d 285, 289 (9th Cir. 1993) (EEOC not required in class suit to document "individual attempts to conciliate on behalf of each potential claimant") (internal citation and quotation marks omitted). Against this background of uniform legal precedent, and absent any prior ruling on the question by this Court, EEOC was more than reasonable in believing that Title VII allowed it to identify claimants through discovery. *See EEOC v. L.B. Foster Co.*, 123 F.3d 746, 755-56 (3d Cir. 1997) (reversing district court finding of frivolity because EEOC reasonably relied on out-of-circuit support on legal question Third Circuit had never addressed).

CRST's litigation conduct shows it, too, believed Title VII allows EEOC to identify claimants in discovery. When EEOC filed suit, CRST knew that EEOC had not identified all claimants during its investigation; EEOC's investigator told CRST, during conciliation, that EEOC did not know the total number of affected women. VI-Apx.1618.

But CRST did not raise this as a defense in its answer.  I-Apx.48-50.
Nor did CRST question EEOC's satisfaction of presuit requirements
when EEOC added new women to its initial list of claimants during
discovery.

Eventually CRST objected—not about any presuit failure, but
because EEOC was identifying so many women (many of whom CRST
already knew about through its internal harassment complaints).
CRST requested a firm deadline for adding new claimants, and the
court complied.  I-Apx.51-54.  Such a deadline would have been
unnecessary if either CRST or the court thought EEOC could not use
discovery to identify claimants.  Further, none of the 400+ pages of
argument in CRST's seven summary judgment motions mentioned
presuit requirements.

CRST did not question EEOC's satisfaction of presuit
requirements until ten weeks after the deadline for filing dispositive
motions and, even then, only after the district court suggested it.  *See*
XVIII-Apx.4756 n.2 (R.197, dated April 30, 2009).  The failure of CRST's
sophisticated counsel to challenge EEOC's compliance with Title VII
presuit requirements until prompted to do so by the district court

reinforces the reasonableness of EEOC's effort to obtain relief for women identified in discovery.

And so does Judge Murphy's dissent. *See* XVIII-Apx.5038-41 (Murphy, J., dissenting). Judge Murphy rightly recognized that "[n]either Title VII nor [this Court's] prior cases require that the EEOC conduct its presuit obligations for each complainant individually when litigating a class claim." XVIII-Apx.5038 (Murphy, J., dissenting). Instead, prior to *CRST I*, this Court had required only that EEOC perform its presuit obligations "for each **type** of Title VII violation alleged by the complainant." *Id.* (citing *EEOC v. Delight Wholesale Co.*, 973 F.2d 664, 668-69 (8th Cir. 1992)).

Judge Murphy's dissent constitutes strong evidence that EEOC's position was not frivolous. *See Busby v. City of Orlando*, 931 F.2d 764, 787 (11th Cir. 1991) (vacating fees because dissent demonstrated the court "had to consider [plaintiff's] claims … very carefully"); *EEOC v. Maricopa Cty.*, 339 F. App'x 688, 689 (9th Cir. 2009) (reversing fees; noting that dissent in earlier merits appeal "raised valid concerns and illustrated the complexities" of the case); *EEOC v. J.B. Hunt Transp., Inc.*, 75 F. App'x 853, 855 (2d Cir. 2003) (reversing fee award; stating

that dissent based on EEOC's submission of substantial supporting evidence "should all but preclude a finding that" EEOC's claim was unreasonable).  The district court discounted the significance of Judge Murphy's dissent, stating that this Court affirmed the presuit ruling "without qualification."  A-24.  To the contrary, Judge Murphy's vigorous dissent—relying on legal precedent that existed when EEOC filed this lawsuit in 2007—confirms that EEOC had far more than "some basis" for believing it had satisfied Title VII's presuit requirements here; it was the accepted practice.[7]

The decisions on which Judge Reade and two judges of this Court relied in rejecting EEOC's position on the merits are all inapposite.  In *Delight Wholesale*, EEOC sought relief for a single claimant, not a class.  973 F.2d at 668.  This Court allowed EEOC's lawsuit to include two types of Title VII violations the claimant had not mentioned in her EEOC charge (constructive discharge and discriminatory pay), because EEOC found these additional types of discrimination while investigating her charge of discriminatory demotion and included them

---

[7] Judges Bye and Melloy later joined Judge Murphy in voting to rehear the case *en banc*.

in EEOC's reasonable cause finding and conciliation efforts. 973 F.2d at 668-69. Likewise here, EEOC uncovered the class harassment claim while investigating Starke's individual harassment charge, and EEOC included that class claim in its reasonable cause finding and conciliation efforts. EEOC thus reasonably believed it had satisfied *Delight Wholesale*'s presuit requirements.

Similarly, the out-of-circuit district court decisions on which Judge Reade and the panel majority relied did *not* bar EEOC from identifying additional claimants post-suit. Two involve wholly dissimilar facts. *See EEOC v. E. Hills Ford Sales, Inc.*, 445 F. Supp. 985 (W.D. Pa. 1978) (single claimant); *EEOC v. Target Corp.*, 02-C-146, 2007 WL 1461298 (E.D. Wis. May 16, 2007) (excluding hiring discrimination claimant who was interviewed by different hiring official at different location in different timeframe).

Three other cases had analogous facts, but those courts *permitted* EEOC to identify claimants during litigation, limiting only the geographic scope of EEOC's class to match the geographic scope of EEOC's investigation. *See EEOC v. Outback Steakhouse of Fla., Inc.*, 520 F. Supp. 2d 1250, 1261-69 (D. Colo. 2007) (allowing EEOC to add

claimants in three-state region EEOC investigated; denying expansion to nationwide class); *EEOC v. Jillian's of Indianapolis, Ind., Inc.*, 279 F. Supp. 2d 974, 978-83 (S.D. Ind. 2003) (allowing EEOC to identify additional class members in Indianapolis-area class; denying nationwide class).

*EEOC v. Dillard's Inc.*, No. 08-cv-1780, 2011 WL 2784516 (S.D. Cal. July 14, 2011), which the panel majority identified, supports EEOC's position. As Judge Murphy noted in her dissent (A-291), *Dillard's*—like *Jillians's* and *Outback Steakhouse*—allowed EEOC to seek relief for a class of as-yet-unidentified claimants from the store EEOC had investigated. 2011 WL 2784516 at *6-8 (EEOC's pre-litigation efforts "put Dillard's on notice of possible claims on behalf of current and former employees of its El Centro store" but not of a potential nationwide class). Three months before this Court's 2012 decision in *CRST I*, the *Dillard's* court clarified in a follow-up opinion that EEOC could seek relief for *sixty claimants* EEOC first identified after suit was filed. *See EEOC v. Dillard's Inc.*, No. 08-cv-1780, 2012 WL 440887, at *8-9 (S.D. Cal. Feb. 9, 2012). Because these three courts

*allowed* EEOC to identify new claimants after suit was filed, none could have alerted EEOC that the practice was impermissible in this circuit.

Judicial decisions since 2007 further confirm that Title VII permits EEOC to identify claimants after filing suit. *See Serrano v. Cintas Corp.*, 699 F.3d 884, 904-05 (6th Cir. 2012) (reiterating EEOC's right to include claimants uncovered in discovery, as long as EEOC's reasonable cause determination and conciliation invitation included the class allegation). Most significantly, the Supreme Court expressly rejected an employer's efforts to require EEOC to identify each class member during conciliation as a precondition to seeking judicial relief for a class. EEOC had sued on behalf of "a class of women who had … applied for mining jobs." *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1650 (2015). The employer had urged the Court to adopt a list of presuit requirements, including that EEOC must, during conciliation, "negotiate[] regarding all the alleged victims for whom it seeks remedial relief." Brief for Petitioner at 37-40, *Mach Mining*, 135 S. Ct. 1645 (No. 13-1019), 2014 WL 4380090 (2014). Rejecting this "bargaining checklist," the Supreme Court held that EEOC satisfies its administrative obligations when its reasonable cause finding specifies

"what the employer has done and which employees (*or what class of employees*) have suffered as a result" and offers the employer "an opportunity to remedy the allegedly discriminatory practice." 135 S. Ct. at 1654, 1656 (emphasis added); *see id.* at 1652 (EEOC "must tell the employer … what practice has harmed which person *or class*") (emphasis added).

Relying on *Mach Mining* and the same body of pre-2007 cases on which EEOC relied, the Second, Fifth, and Ninth Circuits have since joined the circuits that previously held Title VII permits EEOC to identify claimants after filing suit. *See EEOC v. Bass Pro Outdoor World, LLC*, 826 F.3d 791, 803-06 (5th Cir. 2016) (holding EEOC satisfied presuit requirements by informing Bass Pro of the claim against it (discriminatory hiring) and affected class (African American, Hispanic, and Asian applicants); EEOC not required to identify each class member before suit or investigate individually); *Arizona v. The Geo Group, Inc.*, 816 F.3d 1189, 1195-1202 (9th Cir. 2016) (reinstating fifteen EEOC class claimants not identified by EEOC during the administrative process and, therefore, not investigated individually); *see also EEOC v. Sterling Jewelers Inc.*, 801 F.3d 96, 102-04 (2d Cir. 2015)

(courts may not scrutinize EEOC class investigation for sufficiency; EEOC authorized to seek relief for claimants first identified in discovery).

The district court rejected this post-2007 precedent, stating that cases decided after EEOC filed suit cannot establish the reasonableness of EEOC's conduct in September 2007. A-63-64. That is incorrect.[8] *Serrano*, *Geo*, and *Sterling* based their rulings on the same Title VII provisions, legal arguments, and supporting precedent on which EEOC relied here. Consequently, these decisions confirm the reasonableness of EEOC's reliance on the pre-2007 legal precedent.

The court thus abused its discretion imposing fees for these sixty-nine claimants with trial-worthy harassment allegations.

## B. The summary-judgment-dismissed claimants were non-frivolous.

The court imposed most of the remaining fees ($1,745,655.80) for seventy-one of the seventy-eight non-intervenor claimants dismissed on summary judgment that the court ruled frivolous in whole or in part.

---

[8] Indeed, Judge Reade relied on *Outback Steakhouse*, 520 F. Supp. 2d 1250, although it issued after EEOC filed suit. And *Dillard's*, on which the panel majority relied in *CRST I*, was decided in 2011.

Although the court separated these women into roughly four categories, they properly fall into three.

The court ruled eleven claimants frivolous because their harassment was insufficiently severe or pervasive—imposing fees entirely for ten women[9] and partially for one.[10] A-74-75, 100-113. It ruled EEOC's basis for CRST liability frivolous for fifty-six claimants— thirty women who, in the court's view, complained to CRST too late or not at all, A-82-86,[11] and twenty-one (entirely) and five (partially) because CRST "took prompt and effective remedial action within days of

---

[9] The court imposed fees entirely for D.Hindes and F.Shadden based on severity/pervasiveness, A-110-11, and other grounds discussed *infra*. It imposed fees entirely for C.Basye, K.Cannoles, A.Canrell, M.Carney, H.Ferell, M.Lovins, L.Taylor, and L.Thompson based on EEOC's post-deposition concession that their harassment was not severe or pervasive. A-74-75. *See* XVIII-Apx.4919-20, 4931.

[10] The court imposed a half-pro-rata-share for J.Shepler's harassment by trainer Alston, but denied fees for harassment by trainer Kewley. The court denied fees entirely for D.Dockery, V.Holmes, F.McDaniel, C.Payne, and I.Perez and partially for L.Skaggs. A-113.

[11] The court listed twenty-six of these women in a chart and discussed four more in text. A-82-87.

being informed of" the harassment, A-91, 99-100.[12]  The court imposed

fees for eleven women whose harassment occurred (wholly or partially)

more than 300 days before Starke filed her charge.  A-71-74.  The court

ruled these claims unreasonable because EEOC relied on the pattern-

or-practice method of proof to establish liability without having alleged

a pattern-or-practice "claim" in EEOC's complaint.  A-73-75.

The court abused its discretion.  Each woman experienced

unwelcome sex-based conduct, much of it egregious, for which EEOC

reasonably believed CRST was liable under either a supervisor or co-

worker theory of employer liability.  EEOC lost these claims on

summary judgment, but EEOC advanced a viable legal theory and

offered evidence to support its claim.  Fees should, therefore, be

reversed.

---

[12]  The court erroneously said its summary table identifies seventeen
women, A-97, apparently overlooking the four women on A-92.  The
court also discussed five claimants in text.  A-96-99.  The court declined
to impose fees for B.Ybarra and K.Seymour.  A-87-88, 99.

### 1. EEOC reasonably believed all 154 claimants experienced actionable harassment.

Out of 154 EEOC claimants, the court imposed fees for only eleven based on insufficient severity or pervasiveness of the harassment. EEOC reasonably sought relief for all of them.

This Court has noted "[t]here is no bright line between sexual harassment and merely unpleasant conduct." *Hathaway v. Runyon*, 132 F.3d 1214, 1221 (8th Cir. 1997). Likewise, the district court acknowledged there is no "conclusive bar to recovery" when assessing whether conduct is sufficiently severe or pervasive to be actionable. A-102. Significantly, "[a] hostile work environment is a cumulative phenomenon, composed of 'a series of separate acts that collectively constitute one unlawful employment practice.'" *Engel v. Rapid City Sch. Dist.*, 506 F.3d 1118, 1124 (8th Cir. 2007)) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). Therefore, determining whether a particular claim was sufficiently severe or pervasive to be non-frivolous requires consideration of all of the circumstances that claimant experienced. Notably, the harassment here was exacerbated by the isolated and remote places where it

occurred:  in truck cabs, hundreds or thousands of miles away from co-workers, supervisors, or managers.

### a. Hindes, Shadden, and Shepler

The court abused its discretion in finding three claimants partially frivolous based on lack of severity, because the court failed to consider each claimant's allegations as a whole.  Hindes, Shadden, and Shepler alleged harassment from multiple harassers.  But instead of considering each woman as a separate claim, as this Court directed in its 2014 remand, the court parsed out each woman's claim into mini-claims, considering their allegations against each harasser independently.  The court imposed a half-fee for each woman on this basis.[13]

The court applied the wrong legal standard by assessing the severity or pervasiveness of the harassment perpetrated by each individual harasser, without considering each claimant's allegations as a whole.  Viewed under the correct standard, EEOC presented a reasonable claim that each woman suffered a hostile work environment.

---

[13]  A half-fee is all the court imposed for Shepler.  The court imposed full fees for Hindes and Shadden, but partially on other grounds.

Debra Hindes alleged harassment by two trainers and a co-driver during the span of just two months. X-Apx.2818, 2821-36. Her first trainer (Timmerman), among other things, belittled her to other truck drivers; refused to let her shower for four days while she was menstruating; lay nude in his bunk where she could not avoid seeing him; and refused to instruct her as she drove down a steep incline. X-Apx.2820-25. She complained after the latter two incidents, but her dispatcher told her to "hang in there." With no alternative, she agreed. Ultimately, her dispatcher arranged for another trainer; when the dispatcher told Timmerman, he became even more verbally abusive to Hindes. X-Apx.2820-26.

The court ruled EEOC's claim "frivolous" because the court viewed Timmerman's behavior as not "gender based or sexually motivated" and the incidents as "too few and far between to constitute the sort of permeated environment required to prove a sexual harassment claim." A-111. The court ignored the isolated location of the harassment, which heightened the severity of the mistreatment. The court also analyzed Hindes's allegations as if her "hostile" experience ended when CRST

assigned her a new trainer.  As the court itself recognized, A-110, it did not.

Like Timmerman, Hindes's next trainer (Roberts) verbally berated her; cursed her; and screamed at and demeaned her in front of other truck drivers.  He urinated in a bottle while she was driving.  When Hindes reported Roberts's misconduct, her dispatcher responded that she was "almost done" with her training and urged her to "just bear with it."  X-Apx.2826-29.  The district court considered Roberts's harassment sufficiently severe to be actionable (but found it frivolous based on CRST's purportedly adequate remedy).  A-96-97.

When Hindes needed a co-driver shortly after completing her training, CRST put her in touch with Bell, who propositioned her for sex and repeatedly commented on his sex life and his ability "to please a woman," among other things.  X-Apx.2831-32.  The court also considered *this* harassment sufficiently severe to be actionable (finding it frivolous because Hindes did not complain, A-87).

EEOC reasonably believed that a jury, considering Hindes's *total* experience, could find her work environment hostile.  The court thus abused its discretion in ruling EEOC's claim partially frivolous on the

ground that Timmerman's harassment, viewed in isolation, was insufficiently severe. A-110-111.

The court similarly abused its discretion when it carved up Shadden and Shepler's harassment allegations. In late 2004, Shadden's trainer rubbed her leg while she was driving; touched her "in [her] bra area"; and repeatedly asked her about her sexual experiences. XIII-Apx.3708-09. The court ruled this harassment untimely, but it was still relevant to EEOC's claim that Shadden's work environment was hostile. Shadden alleged that three different co-drivers thereafter made sexual advances. XIII-Apx.3712. And a few months later, CRST made Shadden a trainer and assigned her a male trainee who pressured her to sleep with him and climbed into her bunk and refused to leave. XIII-Apx.3713-18, 3724. The court apparently considered this conduct actionable.[14] But the court wrongly analyzed the earlier allegations without considering what happened afterwards. Considering Shadden's allegations as a whole, EEOC reasonably believed she experienced a hostile work environment.

---

[14] The court nevertheless ruled EEOC's claim frivolous as to the trainee because at Shadden's insistence, her dispatcher finally agreed to remove him from her truck. A-98-99.

Two trainers harassed Shepler. The first trainer showed her his collection of pornographic DVDs and invited her to watch with him; she declined. XIV-Apx.3775. Thereafter, he berated her repeatedly until she insisted CRST remove her from his truck. XIV-Apx.3776-78. CRST assigned a new trainer (Kewley) who repeatedly talked about sex, propositioned Shepler, and played "audio porno" on the truck's speakers. XIV-Apx.3778-80. The court considered her allegations as to each man separately and found the first frivolous and the second non-frivolous. A-109-10. Again, the court erred by failing to view the harassment in its totality; viewed as a whole, EEOC's claim for Shepler was non-frivolous.

### b. Eight conceded claimants

The court likewise abused its discretion in imposing fees for the eight women EEOC decided to concede, after reviewing their depositions and CRST's summary judgment motions, had not experienced harassment that was severe or pervasive. EEOC acted "within the bounds of professional conduct" in initially pursuing relief for these women. *Serrano*, 699 F.3d at 905. Each woman experienced unwelcome conduct based on sex (that was often of a sexual nature):

- Cristie Basye's trainer and co-driver made derogatory comments about female drivers; she felt unsafe with them on the truck (III-Apx.856-57);

- Kathy Cannoles's trainer urinated and defecated in the truck in her presence and said he expected her to; exposed his penis (I-Apx.185-87; III-Apx.867);

- Andrea Cantrell's trainers made sexually suggestive comments and ogled her, screamed at her, belittled her, and removed her paperwork (I-Apx.188-90; III-Apx.867);

- Meredith Carney's student asked if she would pass him if they had sex and threatened her with bodily harm (I-Apx.209-11);

- Helen Ferrell's trainer often screamed at her and threatened to kick her out of truck (I-Apx.283-84; III-Apx.879);

- Madeline Lovins's trainer—who also harassed Starke—made unwelcome sexual comments; suggested she was having phone sex with her boyfriend; masturbated on the truck (II-Apx.416-18; III-Apx.901);

- Laura Taylor's trainer rubbed her leg; her trainee asked her if she was wearing underwear after her shower; she overheard other inappropriate remarks (III-Apx.618-19; IV-Apx.944-45); and

- Laurie Thompson's trainer urinated in front of her; had phone sex with his wife while in the truck; kept pornographic magazines in the truck; and touched her buttocks three to four times (III-Apx.625-28; IV-Apx.945).

At a minimum, these women experienced conduct close to the actionable line. *See Hathaway*, 132 F.3d at 1221 ("no bright line"

distinguishes "sexual harassment and merely unpleasant conduct"). Thus, even though the Commission made a strategic decision, after reviewing these women's depositions and CRST's summary judgment arguments, to winnow down this extremely large case by foregoing relief for these claimants, the Commission's initial inclusion of these women was not "so 'unreasonable' so as to warrant" fees under *Christiansburg*. *See Serrano*, 699 F.3d at 905 (noting that even if the Sixth Circuit had not reversed summary judgment, fees would have been unwarranted under *Christiansburg*, despite EEOC's ultimate withdrawal of approximately forty claimants "because they lacked merit").

### 2. EEOC reasonably believed CRST was liable for the harassment.

The court ruled fifty-six claimants frivolous because CRST lacked contemporaneous notice of the harassment (thirty claimants) or responded promptly and effectively (twenty-six claimants). A-75-100. The court abused its discretion, because EEOC reasonably relied on well-established legal theories that provided grounds for CRST liability, whether the harasser was a trainer or co-driver. Indeed, the district court *denied* CRST appellate fees, A-121, even though EEOC advanced

the same legal theories on appeal.  These identical arguments—supported by legal precedent and record facts—were reasonable when EEOC advanced them prior to the appeal.

The district court analyzed these fifty-six women in two separate groups, one based on lack of notice, the other on adequate remedy. EEOC's theory for CRST's liability was the same for both groups, however, grounded in the Supreme Court's statement that Title VII's "primary objective … is not to provide redress but to avoid harm." *Faragher v. City of Boca Raton*, 524 U.S. 775, 806 (1998) (recognizing "employer's affirmative obligation to prevent" workplace harassment in addition to remedying it).  For both trainer and co-driver harassment, EEOC reasonably argued that CRST failed to take available measures that might have prevented that harassment (or future harassment) from occurring in the first place.

Between January 2005 and October 2008, CRST's HR department received a steady stream of harassment complaints from female trainees and co-drivers, averaging one complaint per week.  At some point, EEOC argued, these complaints put CRST on actual or constructive notice that its existing practices, including its standard,

non-punitive responses to complaints, were inadequate to prevent workplace harassment. Employers need not be omniscient but, this Court has explained, they can be held liable under Title VII if they "turn[] a blind eye to overt signs of harassment." *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 802 (8th Cir. 2009) (citation and internal quotation marks omitted).

EEOC sought relief for these fifty-six women under two sets of inter-related theories of liability—one for trainer harassment (the bulk of the complaints); the other for co-driver harassment. Both theories were reasonable.

### a. Trainer Harassment

The Supreme Court held that employers are vicariously liable for harassment by a supervisor, even without knowing about the harassment, unless the employer establishes a two-part affirmative defense. An employer must demonstrate *both* that it exercised reasonable care to prevent and promptly correct harassment *and* that the complainant unreasonably failed to make use of the employer's preventive or corrective measures. *Faragher*, 524 U.S. at 806-07; *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). EEOC had

a reasonable basis for arguing that CRST trainers were supervisors and that a jury could therefore find CRST liable.

i. *Trainers were supervisors.*

As of 2007, this Court had held that to be considered a supervisor for this purpose, "the alleged harasser must have had the power (not necessarily exercised) to take tangible employment action against the victim, such as the authority to hire, fire, promote, or reassign to significantly different duties." *Merritt v. Albemarle Corp.*, 496 F.3d 880, 883 (8th Cir. 2007) (citation and internal quotation marks omitted). EEOC reasonably argued trainers met this standard. Indeed, "even CRST's human resources director characterized [its] trainers as 'really no different than … supervisors.'" *CRST I*, XVIII-Apx.5020.

Judge Reade did not find this argument frivolous. A-82 n.12. And, as Judge Murphy observed in her dissent, *Faragher* supports EEOC's contention. The Supreme Court assumed two employees were Faragher's supervisors based on the "virtually unchecked authority" the City had granted them to "directly control[] and supervis[e] all aspects of [Faragher's] day-to-day activities" as an ocean lifeguard, "completely isolated" from "higher management." XVIII-Apx.5039 (Murphy, J.,

dissenting) (quoting *Faragher*, 524 U.S. at 808 (internal quotation marks omitted)). CRST trainers similarly exerted extensive control over their trainees, far from CRST management oversight. That control included determining when and how much a trainee could drive, stop for food, use the bathroom, shower, or use the truck's satellite device to communicate with the outside world. *Id.* Indeed, some trainers exercised extreme control over trainees' outside communications by removing their personal cell phones or phone chargers, or delaying instruction on use of the truck's internal communication system. Because this Court had never applied its supervisor standard in any factual context similar to this uniquely isolated work environment—where trainers and trainees were alone over the road for long stretches, far-removed from CRST managers or other CRST employees, *see* XVIII-Apx.5039-40—EEOC's reliance on *Faragher*, with its similarly-isolated lifeguards, was reasonable.

Indeed, CRST gave trainers "authority to evaluate their [trainees'] progress," relied on trainers' pass/fail ratings "nearly always," and followed trainer recommendations "almost exclusively" "in determining whether trainees would be promoted to full driver status." *Id.* This

authority enabled trainers to coerce trainees by withholding critical driving experiences needed to complete training or by threatening to report that a trainee needed more training. As Judge Murphy observed, "This unique environment facilitated the ability of certain trainers to make sexual propositions and demand sexual favors." XVIII-Apx.5039.

This reality is illustrated by Jeana Fowler-Allen, whom the district court offered as typical of the claims dismissed for lack of notice. A-75. CRST hired Fowler-Allen in April 2007. I-Apx.108. After she completed orientation, CRST assigned her trainer Roderick Jones. *Id.* As Fowler-Allen understood it, Jones shared supervisory authority with her dispatcher and was responsible for deciding when she passed her training. XXI-Apx.5707 (Roderick "was my supervisor. I had to follow what he said to do.").

While they drove together, Jones made sexually suggestive and offensive comments. Fowler-Allen told him to stop but did not complain to her dispatcher. Jones invited her to sleep with him; when she declined, he became sullen for several days. When her four-week training ended, Jones told the dispatcher she needed two more weeks. The dispatcher accepted this assessment, refused Fowler-Allen's

request for a different trainer, and sent her back out with Jones. XXI-Apx.5708-14.

A few days later, during a short lay-over, Jones let Fowler-Allen know that if she had slept with him before, her training could have already ended. He then invited her—again—to sleep with him. She declined and spent the night in the truck while Jones slept in a hotel. The next morning she still did not want to sleep with Jones but, anxious to end her training, she finally agreed. That night they had sex. Although the two-week extension period had not ended, Jones told the dispatcher that Fowler-Allen was ready to be promoted to co-driver, and she was. XXI-Apx.5715-19.

Fowler-Allen is only one of several women coerced into unwanted sex with promises of promotion to co-driver if she did or threats of extended training if she refused. *See, e.g.*, *CRST I*, XVIII-5020 (Starke's charge alleged her trainer "forced" her to have "unwanted sex with him on several occasions … in order to get a passing grade").

This substantial trainer control combined with the isolated context distinguishes this case from pre-2007 cases where this Court had rejected "supervisor" status based on lack of authority to hire, fire,

etc.  And had CRST trainers been recognized as supervisors, CRST would have been vicariously liable in situations like Fowler-Allen's, despite any failure to complain, subject only to CRST's ability to establish the *Faragher/Ellerth* affirmative defense.

Although the district court rejected EEOC's trainers-are-supervisors argument on its merits and two members of this Court affirmed, it was nevertheless reasonable.  The fact that Judge Murphy found it persuasive, *see CRST I*, XVIII-Apx.5039-40 (Murphy, C.J., dissenting), provides strong evidence that EEOC's argument was not frivolous.  And in 2007, at least one other circuit had adopted a standard under which CRST trainers would have been considered supervisors.  *See Joens v. John Morrell & Co.*, 354 F.3d 938, 940 (8th Cir. 2004) (recognizing circuit split).

Also, the year after this Court decided *CRST I*, a sharply divided Supreme Court resolved the existing circuit split in *Vance v. Ball State University*, 570 U.S. 421 (2013).  Four dissenting justices urged a view aligned with EEOC's position here.  *See id.* at 458-61 (Ginsburg, J., dissenting) (endorsing EEOC standard because, *inter alia*, it reflected "workplace realities").  Even the majority in *Vance* adopted a view

supporting EEOC's argument. The Court stated that if an employer's decisionmakers rely on the opinions of those who work directly with the employee in question—as CRST did here—"the employer may be held to have effectively delegated the power to take tangible employment actions to the employees on whose recommendations it relies." *Id.* at 446-47 (majority opinion).

ii. *Faragher/Ellerth affirmative defense.*

The district court acknowledged EEOC's argument that if trainers were supervisors, CRST could be liable because CRST "knew women were at risk of being harassed" yet "failed to take reasonable measures to prevent the harassment in the first instance." A-77. Yet the court expressly avoided deciding whether EEOC's trainers-are-supervisors argument was reasonable, stating "the[se] claims meet the *Christiansburg* standard because they lacked a factual basis." A-82 n.12. Although unclear, the court appears to have ruled thirty women (twenty-one of them harassed by trainers) "frivolous" solely because each knew that CRST had a complaint procedure but failed to use it as the harassment was occurring (or at all). A-78-88. Similarly, the court ruled twenty-six women (twenty of them harassed by trainers) frivolous

because CRST took steps to address their immediate complaints by separating them from their harassers.

Those facts, however—even if true—would not establish CRST's affirmative defense as a matter of law. Rather, given the volume of complaints CRST was receiving, EEOC reasonably believed that a jury could decide that CRST's routine response did *not* constitute reasonable steps to prevent harassment from occurring in the first place nor appropriate remedial steps afterwards to discourage the same or other trainers from harassing the same or other trainees in the future.

Effective prevention goes hand-in-hand with an employer's response to harassment complaints. Responses not only must remedy the immediate situation, but also must send a message that harassment is not tolerated. *See Fuller v. City of Oakland*, 47 F.3d 1522, 1528-29 (9th Cir. 1995) (effectiveness of response is "measured by the twin purposes of ending the current harassment and deterring future harassment—by the same offender or others"). Thus, an important factor in assessing the adequacy of an employer's response to harassment is whether the remedy "persuade[s] potential harassers to refrain from unlawful conduct." *Ellison v. Brady*, 924 F.2d 872, 881-82

(9th Cir. 1991). *See also Anderson v. CRST Int'l, Inc.*, 685 F. App'x 524, 526 n.1 (9th Cir. 2017) ("by failing to take appropriate corrective action" employer may essentially "ratify harassing conduct").

When an employer receives repeated complaints concerning the same harasser, this Court has explained that "[t]he reasonableness of an employer's response … 'may well depend upon whether the employer progressively stiffens its discipline, or vainly hopes that no response, or the same response as before will be effective.'" *Engel*, 506 F.3d at 1126 (citations omitted). EEOC reasonably believed that this same principle carried as much if not more force when an employer receives ongoing complaints from multiple employees alleging harassment by different harassers.

EEOC pursued relief for these forty-one trainees based on the reasonable belief that CRST's steady stream of harassment complaints (an average of one or more per week for almost four years) notified CRST that harassment was widespread among its workforce. *See Sandoval*, 578 F.3d at 802-03. Indeed, between January 2005 and October 15, 2008, 9.4% of all women paired with men complained of sexual harassment. A-77-78; IV-Apx.1082 (EEOC Fact ¶ 279). EEOC

further believed that a jury could find that CRST's standard practice of merely separating the harasser from his victim and giving him a verbal warning, although it might address the immediate complaint, did not send a message of deterrence to CRST's workforce. EEOC thus had a non-frivolous basis for contending that the reasonable care prong of the *Faragher* affirmative defense, 524 U.S. at 806-07, required CRST to do more to send a meaningful message of deterrence to potential future harassers.

Specifically, EEOC believed that CRST's failure to stiffen its response to harassment essentially informed its workforce that harassment had no consequences. *Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1242-43 (10th Cir. 1999) (jury could find defendant's "corrective action" was inadequate where, among other things, defendant knew of harassment but never disciplined any employee for it); *Intlekofer v. Turnage*, 973 F.2d 773, 780 (9th Cir. 1992) ("Failure to impose more harsh disciplinary measures" when initial counseling did not stop harassment "rendered the [employer's] initial warning an empty threat.").

EEOC's argument is illustrated by Fowler-Allen, whom the district court offered as typical of the claims dismissed for lack of notice. A-75-76.  CRST assigned Roderick Jones to train Fowler-Allen in May 2007, and Jones used his position to coerce Fowler-Allen into unwanted sex.  XXI-Apx.5707-19.  By that time, CRST had already documented at least 90 harassment complaints concerning other harassers on its PWE chart since January 2005.  A-154-155.

The PWE chart shows that CRST routinely imposed only a verbal warning ("vw"), sometimes with a temporary restriction against driving with women ("nf" or "no females").  *Id.*  Sometimes CRST simply documented the complaint ("df" or "documented findings").  *Id.*  The complaints recorded included sexual assault[15] and rape.[17]  Only one of the complaints recorded on the PWE chart resulted in CRST terminating a driver for harassment—John Kewley, after the fourth woman complained about him.  IV-Apx.1115-16 (¶ 347).  By failing to discipline drivers who violated its written anti-harassment policy, CRST essentially allowed trainers like Roderick Jones to assume they

---

[15] *See, e.g.*, B.Dixon (IX-Apx.2374; A-156).

[17] *See, e.g.*, G.South (XV-Apx.4064-71; A-155).

could pressure their trainees into having unwanted sex without repercussion.

Seven months later, in December 2007, CRST assigned Jones to train Esther Steanhouse. She said Jones propositioned her too, inviting her on the second or third day (in the middle of the night) to "get in his bed." Steanhouse immediately left the truck and called the night dispatcher, who urged her to return to the truck so Jones could drive her to a CRST terminal, although none was nearby. She refused, retrieved her belongings, and insisted on staying at a motel until CRST could arrange a bus ticket home. She then waited several weeks, without pay, to be paired with a new trainer. XXI-Apx.5810-12; IV-Apx.1101-02 ¶ 297 (drivers not paid when waiting for an assignment).

Steanhouse followed CRST's procedures by notifying her dispatcher of Jones's misconduct. There is no indication, however, that CRST disciplined Jones or even told him he was not allowed to proposition trainees, and no indication CRST banned him, even temporarily, from training other women. *See* A-154-156.

It is no surprise, then, that six months later, in June 2008, when CRST assigned Jones to train Angeline Gatewood, he harassed and

propositioned her as well. For two-and-a-half weeks Jones made repeated sexual overtures, telling Gatewood he had had sex with another CRST driver, and threatened to kick her off the truck. When Gatewood could take no more, she left the truck and took a bus home. XXI-Apx.5732-43.

Jones is one of twenty-one male drivers accused of harassing multiple female trainees or co-drivers. IX-Apx.1116 (¶ 349). For example, Bobb Smith harassed both Starke and Lovins. John Kewley harassed four women before CRST finally fired him.

Some women, like Hindes, *supra*, pp. 44-45, were harassed by two or more harassers. Although the district court ruled some of this harassment was properly remedied when CRST assigned a new trainer or co-driver after the woman complained, EEOC reasonably believed that a jury could conclude, instead, that CRST's "remedy" was *not* adequate where the claimant continued to be harassed, albeit now by someone else.

When Hindes complained about her first trainer's November 2005 abuse (which the court found insufficiently severe, standing alone), CRST re-assigned her to train with Roberts, whose harassment the

court found sufficiently severe but adequately remedied when CRST removed Hindes from Roberts's truck after she complained.  A-96-97.  CRST did nothing more with respect to Roberts.  Soon thereafter, CRST put Hindes in touch with a co-driver who also harassed her.  Given that Hindes complained to CRST about both of her first two harassers and CRST did not investigate or discipline either man, and she ended up shortly thereafter with a third harasser, EEOC reasonably believed that a jury could conclude that CRST's "remedy" for Hindes's second harasser (directing her to a co-driver who also harassed her) simply perpetuated the harassment.

The ineffectiveness of CRST's routine, non-punitive response to complaints is underscored by the comments some harassers made when women told them they intended to complain to CRST.  Three successive trainers harassed Rhonda Wellman between December 2007 and February 2008.  III-Apx.652-53; XVI-Apx.4440-62.  She told each that she was going to report his conduct, and each responded that "the company will stick up for them" and "believe the trainer, not the student."  XVI-Apx.4460-61.

Wellman later told CRST's Vice-President of Operations, Jim Schommer, that "all your drivers make passes" and CRST needed to "do something to let male drivers know CRST will not cover for them," repeating to Schommer what the men said to her. XVI-Apx.4456-61. Schommer apparently took no action, instead telling Wellman that he did not believe CRST's drivers would act like that. XVI-Apx.4461. The PWE chart shows CRST imposed no discipline on two of the men and imposed only the standard "verbal warning/no female partners" on the third. A-156.

As Wellman's testimony shows, drivers talked to one another about their experiences. IV-Apx.1104-05 (women at CRST heard about harassment from other women); *see also, e.g.*, XXI-Apx.5724 (female co-driver told Fowler-Allen she had been raped by a co-driver); XXI-Apx.5813 (Steanhouse never witnessed other CRST drivers being sexually harassed, but "hear[d] about it at … the different drop yards."). Based on this evidence, EEOC reasonably believed a jury could have concluded that if CRST had disciplined at least a few harassers early on, awareness that CRST took harassment seriously would have spread

among the workforce, the same way that awareness of CRST's *failure* to discipline drivers was widely known.

The record evidence demonstrating the volume of complaints CRST had received—which should have informed CRST it had a serious problem and prompted it to do more—included not only EEOC's claimants who complained, but also CRST's HR records showing an additional ninety-nine women who had complained but were not deposed. Because EEOC was unable to produce these women for deposition by the deadline, the court ruled they could not be EEOC claimants or testify at trial. I-Apx.63. Nevertheless, until the court's April 2009 ruling that EEOC could not rely even on CRST's business records, *see* R.VI-Apx.1612-14, they further supported the reasonableness of EEOC's belief that a jury could have rejected CRST's *Faragher/Ellerth* affirmative defense.

Adding the ninety-nine CRST complaint records to EEOC's 154 claimants yields more than 250 women harassed for the forty-six-month period between January 2005 and October 2008 (an average of five or six per month), most of whom complained to CRST either while it was happening or shortly thereafter. The persistence of these complaints

put CRST on notice that its tepid response to harassment was wholly ineffective.

The court ultimately barred EEOC from relying on these CRST business records. But until that ruling, EEOC reasonably relied on CRST's business records as additional evidence of the volume of complaints CRST received during this time, thereby further undermining CRST's claim that it had exercised reasonable care to prevent harassment. EEOC appealed the court's order barring reliance on these business records, and although the appeal was not successful, it also was not frivolous; the district court denied CRST's application for appellate fees, finding the appeal—and, therefore, this argument— reasonable. A-121.

EEOC also reasonably believed CRST could not establish the second prong of the *Faragher/Ellerth* affirmative defense, requiring employers to prove that the claimant unreasonably failed to make use of available mechanisms for complaining or avoiding harm. A number of CRST's trainees had reasonable grounds for delaying reports of harassment to their dispatcher or HR. Some feared the consequences if their trainer overheard them complaining while still on the road. *See*

IV-Apx.1105, ¶¶ 311, 312 (women fear reprisal if they complain while out on the road). Others knew their trainer and dispatcher were friends and feared the dispatcher would tell their trainer. In some cases, a harassing trainer prevented a trainee from complaining by removing the trainee's personal cell phone or phone charger or failing to teach them how to use the in-truck communication system, Qualcomm. Still others had been rebuffed by their dispatcher during earlier complaints and were, therefore, deterred from complaining when harassment recurred.

In sum, EEOC had reasonable bases for arguing that: CRST's trainers were supervisors of their trainees during the 28-day over-the-road training; CRST could not establish one or both prongs of the *Faragher/Ellerth* affirmative defense; and a jury could thus find CRST liable for trainer harassment, regardless of whether a woman reported the harassment.

b. Co-driver harassment.

The district court imposed fees for fifteen women who alleged co-driver harassment: nine who the court believed waited too long to complain or failed to complain at all, and six on the ground that CRST

69

remedied their complaints. The court abused its discretion, because EEOC relied on a reasonable theory of liability supported by legal precedent and record facts.

Co-worker harassment is analyzed under a negligence standard. *Sandoval*, 578 F.3d at 801. An employer is liable for co-worker harassment where it "'knows or should have known of the conduct'" but failed to take "'immediate … and appropriate corrective action.'" *Engel*, 506 F.3d at 1123 (quoting EEOC's guidelines, 29 C.F.R. § 1604.11(d)). Under this standard, an employer may be liable without actual notice, if the employer "reasonably should have anticipated the harassment, *i.e.*, if it had constructive notice." *Sandoval*, 578 F.3d at 801. *See also Erickson v. Wis. Dep't of Corr.*, 469 F.3d 600, 606 (7th Cir. 2006) (employer must take "reasonable steps to prevent harassment once informed of a reasonable probability that it will occur").

Employers can avoid liability by taking "prompt remedial action … reasonably calculated to stop the harassment." *Engel*, 506 F.3d at 1123. An employer may be culpable, on the other hand, "for harassment to which it did not adequately respond," under the theory that the combination of the employer's knowledge plus its inaction

amounts, in essence, to "the employer's adoption of the offending conduct and its results." *Id.* at 1123-24 (citing, *inter alia*, *Faragher*, 524 U.S. at 789).

For the same reasons that EEOC argued that a jury could have rejected CRST's attempt to establish the prevention prong of the *Faragher/Ellerth* affirmative defense, EEOC also reasonably believed a jury could have found CRST negligently liable for the co-driver harassment of these fifteen women. EEOC reasonably believed, for both sets of claimants, that CRST's regular practice of fixing only the immediate situation without imposing any serious discipline, combined with its knowledge that harassment was widespread and not abating under this practice, was not "reasonably calculated to stop … harassment" from recurring by the same or other harassers. *See Engel*, 506 F.3d at 1125. Instead, it communicated to CRST's male co-drivers that harassment carried no consequences.

The facts here are similar in this respect to those in *Sandoval*, where this Court reversed summary judgment for two plaintiffs because the "nearly one hundred similar complaints made during the time plaintiffs were employed" were "highly relevant" to prove the defendant

had "constructive notice" of plaintiffs' claims. 578 F.3d at 801-03. Only one of the complaints in question involved plaintiffs' alleged harassers; the rest concerned "different victims and different employees at different locations." *Id.* at 804 (Gruender, J., dissenting) (noting that the defendant provided janitorial services at 400 separate locations). This Court remanded for the district court to consider whether the employer's awareness of harassment of different women by different harassers put the company on notice that these two plaintiffs were also at risk of harm, thereby obligating the company to undertake more serious preventive efforts.

The reasonableness of EEOC's belief that CRST could have done more to prevent future harassment is reinforced by the fact that CRST did, eventually, implement additional preventive measures. *See Sellars v. CRST Expedited, Inc.*, 321 F.R.D. 578, 587 (N.D. Iowa 2017) (as of 2015, CRST began using newsletters, memoranda, and Qualcomm messages to drivers and trainers to reiterate and reinforce its sexual harassment policies and to convey company's behavioral expectations). EEOC reasonably believed a jury could find CRST liable for negligently

failing to take these and more robust measures earlier, which might have prevented some or all of the harassment.

Again, the example the district court picked to illustrate CRST's purportedly-adequate response to complaints, Samantha Cunningham (A-88-A-89), illustrates EEOC's point instead. Cunningham could not recall learning about CRST's sexual harassment policy during orientation and was unaware that if she had problems with her co-driver, getting off the truck was an option. VIII-Apx.2272-73, 2284. After her 30-day training, CRST paired her with co-driver Neil Page. VIII-Apx.2275. They drove together for a month in March 2006, during which Page berated her and barraged her with "sex talk" and crude sexual propositioning (six to eight times per day, every day), ignoring her pleas to stop. VIII-Apx.2276-78, 2284.

Fearing the consequences if she reported Page's behavior while out on the road, she waited until the route neared her home, exited the truck, and then told her dispatcher she would no longer drive with Page because of his "sex talk." VIII-Apx.2278-84. CRST sent a manager to talk to her; instead of asking her about the harassment, he tried to pressure her to get back on a truck with another man. VIII-Apx.2278,

2280-81.  On her own, she found a female co-driver; when that driver became unavailable, Cunningham refused CRST's offer of another male driver.  She gave her notice, telling CRST she was "not being listened to." VIII-Apx.2279-83.

Cunningham had followed CRST's designated procedure:  she reported Page's behavior to her dispatcher.  She also discussed it with a CRST manager and a subsequent dispatcher.  CRST never investigated her complaint, never recorded it on the PWE chart, and never disciplined Page.  *See* A-154-56.

Cunningham's story thus illustrates EEOC's legal theory:  Having disciplined *no* harassers between February 2005 and March 2006, CRST had failed to deter would-be harassers like Page.  And once CRST learned about Page's misconduct, it failed even to tell him his conduct was not allowed, let alone impose any consequences that might make Page or other male drivers think twice about subjecting a female driving partner to unwelcome sexual conduct.

Under both rubrics (supervisor and co-worker harassment), EEOC sought relief for these fifty-six claimants based on EEOC's reasonable belief that a jury could find:  (1) CRST's standard response to

harassment complaints lacked any punitive or corrective elements; (2) CRST's two-person HR department knew that using this non-punitive response, harassment complaints were continuing unabated (on average once or more per week, including sexual assault and rape); and (3) CRST's failure to alter its response despite knowing that its current, non-punitive measures were not abating the complaint rate, violated Title VII by signaling to both present and future harassers and victims that CRST tolerated harassment.

The court, on the other hand, applying the negligence theory of liability that governs co-worker harassment, analyzed each complaint individually, as if it were the only complaint CRST had ever received. As long as the record established three things—the victim knew about CRST's complaint process; CRST had no advance notice that this *particular* woman would be harassed by this *particular* man; and CRST separated the two drivers after receiving the complaint—the court ruled CRST could not be liable as a matter of law. A-75-100. EEOC's argument that at some point the cumulative influx of complaints obligated CRST to respond by doing more did not persuade the court.

But the argument was reasonable, and the court abused its discretion in imposing fees on this basis for these fifty-six claimants.

### 3. EEOC reasonably believed it could seek relief for claimants harassed more than 300 days before Starke's charge.

The court abused its discretion in imposing fees for eleven women because their harassment occurred wholly or partially before February 4, 2005 (300 days before Starke filed her charge).[18] A-71-74.

The 300-day limitations period derives from Title VII's charge-filing time limits. *See* 42 U.S.C. § 2000e-5(e)(1). This provision means that litigants generally cannot obtain judicial relief for discrete discriminatory acts that occurred more than 300 days before a charge is filed. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-10 (2002).

EEOC reasonably sought relief for Shadden, Skaggs, and Carney because their earlier harassment continued into the 300-day period,

---

[18] The court granted summary judgment on this basis for twelve women—nine entirely (A.Aguilar, L.Austin, P.Cohen, C.Howard, G.Leach, M.McCain, K.McCall, R.Perhealth, and P.Stephenson), and three for pre-February 4, 2005, harassment only (K.Carney, F.Shadden, and L.Skaggs), R.223 (A-90, 92-93), but imposed fees on this basis for only eleven, having already imposed fees for Carney based on presuit requirements. A-74.

making their claims timely. As the Court explained in *Morgan*, hostile environment claims, by "[t]heir very nature involves repeated conduct." 536 U.S. at 115 (hostile environment "occurs over a series of days or perhaps years"). Thus, if "an act contributing to the [harassment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court" for purposes of determining liability. *Id.* at 117.

EEOC's inclusion of these three women was therefore reasonable under *Morgan*. It was also consistent with this Court's pre-*Morgan* precedent. *See Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1302-03 (8th Cir. 1997) (harassment both predating and occurring within statutory period by different harassers recoverable). Since Title VII makes employers responsible for maintaining discrimination-free workplaces, an employer's tolerance of a hostile work environment constitutes a single discriminatory practice, even when the harassment was committed by *different* harassers in *different* units within the company. As the Seventh Circuit explained, the employer is the "entity responsible for complying with Title VII," and liability attaches based on the employer's failure to respond adequately. *See Isaacs v. Hill's Pet*

*Nutrition, Inc.*, 485 F.3d 383, 386 (7th Cir. May 2007).  As this Court

confirmed in *Jensen*, "[t]he matter alleged to be discriminatory is the

adequacy of the [employer's] response, not Jensen's co-worker's

underlying behavior."  315 F.3d at 861.

EEOC reasonably sought relief for the remaining women based on

the pattern-or-practice method of proof.  Numerous courts have held

that the 300-day limitation period does not apply to pattern-or-practice

hostile-work-environment cases.  *See, e.g.*, *EEOC v. Scolari Warehouse

Mkts., Inc.*, 488 F. Supp. 2d 1117, 1136-37 (D. Nev. 2007); *EEOC v. Dial

Corp.*, 156 F. Supp. 2d 926, 943-44 (N.D. Ill. 2001).  EEOC reasonably

relied on this legal precedent to seek relief for women whose

harassment ended before February 2005—300 days before Starke filed

her charge with EEOC.

The reasonableness of EEOC's belief is underscored by the fact

that in its summary judgment decisions, the district court assumed

without deciding that this was "a pattern or practice sexual harassment

case," and the court understood that EEOC included these eleven

women under the theory that the evidence would show "CRST has

tolerated a pattern or practice of sexual harassment of its female truck

drivers" since at least 1997. *EEOC v. CRST Van Expedited, Inc.*, 611 F. Supp. 2d 918, 938, 950-52 (N.D. Iowa 2009). After a detailed review of the evidence, however, the court concluded that a jury could not find that "tolerat[ing] sexual harassment" was CRST's "standard operating procedure." *Id.* at 939-48, 952-58 (internal quotations and citations omitted). Nevertheless, EEOC reasonably believed that the evidence showed a pattern of sexual harassment and that EEOC could, therefore, seek relief for women harmed before February 2005 by CRST's practice of tolerating this harassment.

When the district court granted CRST summary judgment on these eleven women, it rejected EEOC's reliance on both *Morgan* and the pattern-or-practice theory. *See* R.223 at 9-23 (A-76-90). In awarding fees, however, the court did *not* rule that either of those arguments was frivolous. A-71-74; *see also* A-73 (frivolity finding not based on "quantum of evidence EEOC adduced in support of" pattern-or-practice theory). Rather, the court awarded fees for these claimants because the court found it frivolous to advance either theory without having asserted a pattern-or-practice "claim" in EEOC's complaint. A-73.

The court erred, for two reasons.  First, the *Morgan* rationale is unconnected to the pattern-or-practice proof framework.  Moreover, EEOC need not allege "pattern-or-practice" in its complaint before seeking to use that method of proof at trial.  *See Serrano*, 699 F.3d at 894-99 (relying on *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)).  As here, in *Serrano*, EEOC sued Cintas seeking relief for a class of women under 42 U.S.C. § 2000e-5.  But because EEOC's complaint did not allege that Cintas's conduct constituted a pattern or practice of discrimination, the district court barred EEOC from using the pattern-or-practice method of proof at trial.  *Id.* at 896-97.  The Sixth Circuit reversed.  Noting that plaintiffs have a variety of evidentiary options available to prove intentional discrimination, the court stated that "prior to knowing the universe of evidence available, it may be difficult" in any given case "to determine which theory [of proof] is likely to be more successful."  *Id.* at 897.

The Sixth Circuit further explained that "*Teamsters* provides an evidentiary framework pursuant to which the EEOC may seek to prove its allegations of intentional discrimination, not an independent cause of action."  *Id.* at 898.  Applying the Supreme Court's 2002 *Swierkiewicz*

decision, which the Sixth Circuit said was "controlling," the Sixth

Circuit ruled that EEOC's complaint need only articulate sufficient

facts to state a plausible Title VII claim; EEOC need not specify in its

complaint *how* it intended to prove discrimination. *Id.* at 897-98

(plaintiff not required "to plead the theory of the case in the

complaint").

Likewise here, nothing required EEOC to specify in its

complaint—before undertaking discovery—what method of proof the

evidence might ultimately suggest. It was legal error for the court to

rule otherwise. Because the court articulated no other ground for

imposing fees as to these eleven women, A-73-74, the court abused its

discretion. To the extent the court relied on the same flawed reasoning

to impose fees on EEOC for the eight women whom EEOC conceded

below did not suffer severe or pervasive harassment, *see* A-74-75 & n.9,

those fees should also be reversed.

### C. EEOC had a reasonable basis for seeking to use the pattern-or-practice framework.

In imposing fees for the eleven statute-of-limitations claimants,

the court declined to rely on the ground CRST urged: that EEOC's

attempt to rely on the pattern-or-practice proof framework was, itself,

frivolous.  *See* R.428 at 6-8, 13-16, 22-23.  And the court denied CRST's request for all its estimated pattern-or-practice fees ($456,320.90), a ruling that CRST did not appeal.  The court did, however, award CRST a portion of its pattern-or-practice fees:  $53,336.16 for the nineteen claimants the court found frivolous in whole or in part based on timeliness or EEOC's concession.  A-139.  The court explained that it did so on the ground that EEOC would not have included nineteen women as claimants apart from the pattern-or-practice framework.  The court abused its discretion; EEOC's attempt to rely on the pattern-or-practice framework was not frivolous.

The court calculated the $53,336.16 award by starting with the total fees CRST represented it incurred for its pattern-or-practice motion, $456,320.90.  The court divided $456,320.90 by 154 to derive a per-claimant average fee for CRST's pattern-or-practice challenge.  The court then multiplied the result by eighteen and, notwithstanding this Court's 2014 ruling to the contrary, awarded CRST seventeen full-portions and two half-portions of fees that this Court had disallowed.[19]

---

[19] Other than this partial award of pattern-or-practice fees, the district court treated this Court's 2014 ruling that no pattern-or-practice fees

A-121.  The court explained that if "EEOC had not unreasonably relied on a pattern-or-practice claim, it admittedly would not have been able to assert all of the claims that it did [including] the claims the court dismissed on statute of limitations ground and because the EEOC conceded the alleged harassment was not severe or pervasive."  A-120.

The court was wrong that absent the pattern-or-practice proof framework, EEOC would have excluded the earlier harassment.  As explained above, EEOC would have continued to seek relief for Shadden, Skaggs, and K.Carney under *Morgan*.  And EEOC would have sought to introduce testimony of the nine remaining claimants as relevant background information to show how long CRST had been aware that its female drivers were being harassed, and how similar the allegations are, even dating back to 1997.  More importantly, however, it was *not* frivolous for EEOC to believe that a jury could find CRST engaged in a pattern of neglect.

A court must deny fees to a Title VII defendant when there was "some basis" to support the plaintiff's claim, even if that evidence was

---

could be awarded as binding, despite this Court's 2016 order vacating its 2014 decision following the Supreme Court's remand.

ultimately unavailing.  *Obin v. Dist. No. 9, Int'l Ass'n of Machinists*, 651 F.2d 574, 587-88 (8th Cir. 1981).  Here, EEOC had more than "some basis" for its attempt to use the pattern-or-practice method of proof. EEOC presented extensive anecdotal evidence of CRST's chronic failure to respond adequately to complaints of serious harassment.  *See Catlett v. Mo. Highway & Transp. Comm'n*, 828 F.2d 1260, 1265 (8th Cir. 1987) (anecdotal evidence can suffice to establish a pattern-or-practice of discrimination).  This included over 1,300 pages summarizing:  the harassment that 154 women experienced from their male trainer or co-driver; CRST's responses to the complaints it received; multiple examples where CRST's standard practices failed to assist women who complained; and CRST's failure to alter its standard, non-punitive response despite evidence that sexual harassment was continuing to fester.  See XVIII-Apx.4800 n.13.

EEOC also presented the expert testimony of Dr. Michael Campion.  Dr. Campion provided an in-depth analysis of CRST's responses to the complaints received from January 2005 through October 2008 and detailed how CRST's harassment procedures fell short.  In particular, Dr. Campion noted that although CRST told

drivers harassment was prohibited and they could be disciplined for it, CRST did not reinforce this message by disciplining harassers beyond the standard "verbal warning"—even when a woman reported sexual assault or rape. CRST's non-punitive response largely resulted from its intentional decision by its HR staff not to consider whether harassment actually occurred—a practice CRST's own expert criticized.

Consequently, for the almost-four-years that discovery encompassed, CRST could point to only two instances when it fired a man for harassment (one of them not until the fourth complaint). And CRST could identify no instances where it issued a written warning, suspension, or reduction in pay because of harassment. Indeed, although HR Director Barnes told Gloria South that CRST would fire her trainer after she reported his repeated rapes during her over-the-road training, the PWE chart shows CRST gave her rapist only a verbal warning. XVII-Apx.4521-31; A-155.

CRST's policy made dispatchers the critical link between over-the-road drivers and corporate management, and CRST's harassment policy requires dispatchers to respond to driver complaints promptly and transmit them to HR. The policy further states that dispatchers are

subject to discipline for failing to do so, yet the record demonstrates multiple instances when dispatchers failed to respond or failed to report complaints to HR.  CRST could not identify even a single time when it disciplined a dispatcher for such a failure.

The district court acknowledged that EEOC's evidence demonstrated that "146 female drivers variously suffered physical, mental and/or emotional abuse at the hands of their male co-drivers and lead drivers."  XVIII-Apx.4799.  Despite having ruled EEOC's evidence insufficient to establish a pattern-or-practice of negligence on CRST's part, the court ruled that EEOC could still seek relief for individual claimants.  XVIII-Apx.4818.  And after the court ruled on CRST's summary judgment motions, EEOC was left with sixty-nine individual trial-worthy claims (thirty-four women for whom CRST never sought summary judgment; thirty-three for whom the court denied summary judgment; and two this Court added in *CRST I*).

"Allegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, 'groundless' or 'without foundation' as required by *Christiansburg*."  *Hughes v. Rowe*, 449 U.S. 5, 15-16 (1980) (per curiam) (reversing fees awarded

civil rights defendant under 42 U.S.C. § 1988); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983) (same legal principles govern Title VII and § 1988 fee awards). Indeed, it took the court sixty-seven pages to explain why it was disallowing EEOC's use of the pattern-or-practice method of proof, strongly indicating that EEOC's position was reasonable. *See Williams v. City of Carl Junction, Mo.*, 523 F.3d 841, 844 (8th Cir. 2008) (reversing fee award because, *inter alia*, district court's thirty-six-page opinion and Eighth Circuit's ten-page opinion showed plaintiff's allegations "deserved and received" "careful consideration").

Given EEOC's extensive factual record showing that CRST failed to protect women in far more than just a handful of cases, EEOC acted reasonably in seeking to prove its case using the *Teamsters* pattern-or-practice method of proof. The court thus abused its discretion in awarding CRST a portion of its pattern-or-practice fees for nineteen EEOC claimants.

## II. *Fox v. Vice* precludes fees because CRST has not established that any fees were incurred solely in defense of a frivolous claim.

Where a defendant prevails in a civil rights case that includes both frivolous and non-frivolous claims, the defendant is entitled to recover *only* "the reasonable attorney's fees [it] expended solely because of the frivolous allegations.  And that is all." *Fox*, 563 U.S. at 840-41.  As the district court acknowledged (R.410 at 1-2), CRST bore the burden of establishing what fees met this standard.  *See Hensley*, 461 U.S. at 437 (fee applicant bears "burden of establishing entitlement to an award and documenting the appropriate hours expended").

*Fox* required the district court to exclude any fees CRST incurred for work that addressed frivolous and non-frivolous allegations, and to limit the award to fees that CRST "would not have accrued but for the frivolous claim." *Fox*, 563 U.S. at 836-39.  On appeal, this Court "must determine whether the trial court asked and answered that question, rather than some other." *Id.* at 839.

The district court here did not ask and answer the correct question.  Even assuming some claims were frivolous under *Christiansburg*, the court erred in imposing fees.  The court determined

there were some *non*-frivolous claims, and CRST did not appeal those rulings. CRST thus had the burden under *Fox* of establishing which fees it would not have incurred "but for" the frivolous claims.

CRST did not and cannot satisfy its *Fox* burden, for several reasons. CRST conceded it has *no* fee records showing time spent on any particular claimant or even group of claimants. The "per-claimant-average-fee" that the court—over EEOC's objection— adopted to accommodate this critical deficiency wrongly swept in large portions of CRST's fees that addressed EEOC's lawsuit as a whole and, therefore, should have been disallowed. But even if CRST's attorneys had maintained more refined records of work they performed, CRST still could not satisfy *Fox* here because in this particular case, EEOC's claims were all inextricably intertwined.

### A. CRST incurred most of its fees defending EEOC's lawsuit as a whole and not any particular frivolous claimant.

This Court directed the district court to determine whether any claimants were frivolous and, if so, to "apply the *Fox* standard to determine what fees, if any, CRST 'expended solely because of the frivolous allegations.'" *CRST II*, 774 F.3d at 1185 (quoting *Fox*). In

response, the district court awarded no fees for the seven intervenors and no (or only partial) fees for another nine non-frivolous claimants. A-81. Thus, EEOC's lawsuit included at least sixteen non-frivolous claims. *See Efron v. Mora Dev. Corp.*, 675 F.3d 45, 46 (1st Cir. 2012) (treating as non-frivolous any claims the district court did not expressly rule frivolous). And of course, this Court may agree with EEOC that far more claims were non-frivolous; reversal by this Court of the fees the court imposed based on presuit requirements would bring the number of non-frivolous claimants to at least eighty-five.

But even if there are only sixteen non-frivolous claimants, fees must be reversed because the court included in its award fees that CRST incurred responding to EEOC's lawsuit as a whole, and not to any individual claimant (frivolous or not). The district court started with the total fees it awarded CRST in 2013 (when it believed EEOC's entire lawsuit was frivolous except as to Starke). The court subtracted from this total a few categories of expenses, and then calculated two separate per-claimant-fee-averages (one for the summary judgment claimants it found frivolous; the other for the presuit claimants, all of whom it ruled frivolous). The court then multiplied each pro-rata share

by the number of claimants in each category that the court deemed frivolous.[20]

Fox does not permit courts, in a civil rights case, to use this type of pro-rata allocation of fees based on the number of claims in lieu of an actual demonstration of what fees were incurred exclusively to defend against a frivolous claim. *Harris v. Maricopa Cty. Super. Ct.*, 631 F.3d 963, 969-73 (9th Cir. 2011). The manner in which this case unfolded illustrates why: the court's use of a pro-rata fee calculation here awarded CRST most of the fees it incurred during the first five months after EEOC filed its complaint, before EEOC identified any claimant other than Starke. Some of this work addressed Starke's claim—on which EEOC *prevailed*; the rest was done to address EEOC's case as a

---

[20] Starting with the $4.23 million fees the court awarded CRST in 2013, the court subtracted $128,414.50 for CRST's presuit motion and $456,320.90 for CRST's pattern-or-practice motion. A-121-22. The court divided the result ($3,644,476.27) by 152 (the number of claimants represented by the prior award) to derive a per-claimant average fee of $23,976.81. A-122. At CRST's request, the court later adjusted this pro-rata figure up for the summary judgment claimants (to $24,937.94) and down for the presuit-requirements claimants (to $20,224.34). A-136-139. The court added $122,749.25 for CRST's presuit motion and $53,336.16 for portions of the pattern-or-practice fees the court otherwise disallowed. A-138-139.

whole.  *See* XIX-Apx.5096-5147.  Among other things, this initial legal work included:

- researching defenses and preparing answer;

- researching "liability for constructive discharge precipitated by supervisor's alleged sexual harassment"; "*Ellerth/Faragher* affirmative defense"; "lead driver supervisor status"; "tangible employment action"; and "pattern-and-practice-hostile-work-environment cases";

- preparing and implementing "document holds";

- reviewing materials related to CRST's sexual harassment policies, practices, and internal training;

- researching and drafting "case law on protective orders in EEOC-filed cases";

- preparing "Rule 26 initial disclosures."

CRST's lawyers also prepared a "chart of sexual discrimination charges against CRST."  Without knowing the identities of any complainant besides Starke, multiple CRST attorneys spent a total of approximately 100 hours reviewing internal complaints from other CRST trainees and co-drivers, compiling relevant documents, and preparing/revising a "Master Incident Spreadsheet."  *See, e.g.*, XX-Apx.5131-44.  CRST's out-of-state counsel also prepared and filed pro

hac vice motions. All of this work responded to EEOC's lawsuit overall. Therefore, it should have been excluded from CRST's fee award. Yet the court excluded only the portion addressing Starke.

The same is true of much of the legal work CRST's attorneys performed throughout the next twelve months of discovery, when CRST filed numerous procedural motions, appeared at hearings, and researched and drafted summary judgment motions. Virtually every billing entry during this time shows work that either related to the entire lawsuit or necessarily encompassed non-frivolous claimants.

For example, CRST excluded Starke's deposition costs, XIX-Apx.5074-75, but it *included* the time spent preparing for and taking depositions of the other non-frivolous claimants. And CRST represented that it excluded its estimated time spent preparing the intervenor summary judgment motion from its estimated non-pattern-or-practice summary judgment fees ($570,224.10, *see* R.470 at 2). *See* R.470-1 (Kras Declaration ¶ 3). But leaving aside concerns about CRST's method of calculating this exclusion,[21] CRST incurred

---

[21] Where the same billing entry reflected work on other tasks as well as the intervenor motion, CRST's paralegal divided the total time by the

additional fees related solely to these non-frivolous intervenors, including, for example, opposing the intervenors' motions to intervene and to amend the complaints-in-intervention; answering the complaints-in-intervention; and conducting intervenor depositions. None of these fees were excluded from the total the court used to calculate the per-claimant-fee-averages, even though *Fox* bars awarding such fees to CRST.

The court adopted a per-claimant-average fee that encompassed virtually all of the fees CRST incurred responding to EEOC's lawsuit overall—work that necessarily went to defending against non-frivolous claims as well as any frivolous claims. In so doing, the court's approximation strays far beyond what even "rough justice" would allow. As explained *infra*, however, this does *not* warrant remand to give CRST and the court another crack at satisfying *Fox*. Rather, CRST cannot identify what fees it incurred exclusively for a frivolous claim, because EEOC's claims are inter-related in a way that cannot be teased apart.

___

number of tasks listed, with no demonstration that this mathematical calculation correlated at all with the attorney's allocation of time to each listed task.

## B. EEOC's claims are inextricably intertwined.

Fees are barred under *Fox* because under EEOC's liability theory, all 154 claims are inextricably intertwined. Where a plaintiff in a civil rights suit prevailed on at least one claim (as EEOC did with Starke), and the claims on which the plaintiff lost are frivolous and non-frivolous, the prevailing defendant can recover fees only for claims that are both frivolous and "distinctly different" from the non-frivolous claims, *i.e.*, where they are "based on different facts and legal theories." *Hensley*, 461 U.S. at 434-35 & n.10. As the Supreme Court clarified in *Fox*, any fee award to a prevailing defendant must *exclude* all fees for work the defendant would have done anyway to address a non-frivolous claim (including work done to address the lawsuit as a whole).[22] *Fox*, 563 U.S. at 834-37.

---

[22] *Hensley* suggested that civil rights cases involving multiple unrelated claims "are unlikely to arise with great frequency," noting that many cases involve only a single claim and others involve "a common core of facts" or are "based on related legal theories." 461 U.S. at 435. If the interrelated nature of a partially-prevailing plaintiff's claims "mak[es] it difficult to divide the hours expended on a claim-by-claim basis," the Court directed district courts to focus on the "significance of the overall relief" the plaintiff obtained. *Id.* Here, it appears the district court wrongly applied *Hensley*'s approach for prevailing plaintiffs to CRST as a prevailing defendant. This does not work, because *Christiansburg*

The inter-connected nature of EEOC's claimants flows from the nature of employer liability for workplace harassment, which hinges primarily on an employer's response to what it knew or should have known. *Engel*, 506 F.3d at 1123. It is true that a plaintiff must demonstrate that the harassment was sufficiently severe or pervasive to be actionable. Here, however, the district court imposed fees on this basis for only eight women entirely and three women in part. The remaining women all experienced unwelcome, sex-based conduct that the court ruled or assumed was actionable. *See, e.g.*, XVIII-Apx.4799 (recognizing the "physical, mental, and/or emotional abuse" that 146 EEOC claimants "variously suffered … at the hands of their male co-drivers" and trainers). The court imposed fees as to them solely because it found EEOC's liability theory unreasonable (or, for nine claimants, because the harassment occurred before February 2005). The stories of all of these women, however, comprise the narrative on which EEOC reasonably argued that a jury could find CRST liable for negligently

and *Fox* required the court to exclude all fees CRST incurred in defense of both frivolous and non-frivolous claims.

failing to make an effort to eliminate or minimize the harassment it knew was recurring.

Because CRST defended against Title VII liability by arguing it had a formal anti-harassment policy that it implemented effectively, much of the discovery and summary judgment briefing centered around whether CRST in fact implemented its policy effectively. All of this discovery was relevant to all sixteen non-frivolous claims. EEOC propounded extensive discovery on how CRST implemented its policy and deposed fourteen CRST officials and employees and one CRST expert. *See, e.g.*, XVII-Apx.4545-4729. All of these hours needed to be (but were not) excluded from CRST's fee award.

EEOC's liability theory depended not only on what CRST's officials described as their normal practice, but also on what happened to EEOC's claimants despite CRST's asserted practice. Here, EEOC's claim for the sixteen non-frivolous claimants was integrally intertwined with the stories of the other 138 women (the sixty-nine trial-worthy claimants the court found frivolous based only on presuit requirements, and the remaining sixty-nine summary-judgment claimants).

The sixteen non-frivolous claimants experienced harassment spanning more than a decade (1997 to September 2008).  Two had the same harasser.  EEOC's claim that CRST was liable for the harassment of these sixteen women rested in part on the factual backdrop of the experiences of the other 138.  Considered altogether, the stories of EEOC's 154 claimants demonstrated that CRST repeatedly received complaints but failed to take the kinds of steps that would send a deterrent message; and, predictably, harassment continued unabated.

Had this case gone to trial, EEOC would have sought to present all, or most, of these women as witnesses for liability, punitive damages, and injunctive relief, to show the extent of CRST's knowledge and inaction in the face of serious complaints.  And because even if EEOC sought relief for only the sixteen non-frivolous claimants, EEOC still would have listed the 138 women as witnesses, CRST likely would have deposed all 138 anyway, incurring virtually the same fees.

To be sure, if EEOC had listed these women only as witnesses, CRST would not have needed to include them in its summary judgment motions.  CRST could only receive fees for those motions, however, if it

established what portion of its summary judgment fees related exclusively to frivolous claims. CRST did not do this.

CRST sought summary judgment for 121 claimants in six separate motions, each focusing on a different legal issue relevant to a different group of claimants. In each motion, CRST made general legal arguments followed by a few paragraphs for each claimant applying those overall legal principles to the specific facts. In one, CRST sought summary judgment based on judicial estoppel for six EEOC claimants. R.144. EEOC *prevailed* on this issue on appeal, XVIII-Apx.5026-5030, so CRST is not entitled to fees for this motion. CRST's intervenor motion (R.145) and three other motions addressed liability for harassment based on failure to report/effective response (R.146), lack of severity/pervasiveness (R.148), or both grounds (R.149). The district court denied CRST's motions wholly or partially as to thirty-four

women, ruling their allegations trial-worthy.[23]  Five of the six motions

included non-frivolous claimants.[24]

Given the pervasive overlap within (and between) these motions,

CRST failed to meet its burden of identifying what legal research and

summary judgment work was done solely for a frivolous claim.  CRST's

fee application does not even separate out what fees CRST incurred for

each summary judgment motion.  Even if it could, it would only be

allowed to recover summary judgment fees attributable *solely* to a

frivolous claim.  In other words, any work CRST's attorneys would have

done anyway in seeking summary judgment for the non-frivolous

claimants would have to be identified and deducted from any fee award.

---

[23] The court denied CRST's statute-of-limitations motion as to four
EEOC claimants (XVIII-Apx.4841-44).  The court also denied various
portions of the remaining motions, including the intervenor motion, all
of which contained overlapping arguments.  XVIII-Apx.4897-98, 4911-
12, 4926-27, 4934-35.

[24] See R.145 (motion addressing six of seven intervenors, none of whom
were found frivolous); R.256 at 9-14 (decision granting summary
judgment as to non-frivolous claimants V.Holmes, F.McDaniel, and
I.Perez); and R.258 at 3-8 (granting summary judgment as to non-
frivolous claimants D.Dockery, C.Payne, K.Seymour, J.Shepler,
L.Skaggs, B.Ybarra).

The partial fees the court imposed for Jonne Shepler and Linda Skaggs help illustrate this point. Each woman alleged two different harassers. In 2014, this Court ruled that each EEOC claimant represents a separate claim. On remand, however, the district court treated Shepler and Skaggs as representing two claims each and imposed a half-portion of fees on EEOC for each woman, finding one harasser frivolous and the other non-frivolous.

This violates *Fox*, because for each EEOC claimant, the existence—and extent—of a hostile work environment requires consideration of the circumstances as a whole. *Engel*, 506 F.3d at 1124. Skaggs may not have been entitled to compensation for her 2003 allegations against her first trainer, but it was part of her work environment and experience, and the fact that she reported it to HR made it part of CRST's knowledge that women were being harassed. CRST asked Skaggs about it during her deposition. XIV-Apx.4009-10. And had her non-frivolous claim of 2005 co-driver harassment gone to trial, the trial court likely would have admitted her testimony about the earlier harassment as relevant background information. *Howard v. Burns Bros.*, 149 F.3d 835, 844 (8th Cir. 1998) (jury could consider

harassment outside relevant time period).  CRST has not shown that Skaggs's 2003 allegations caused it to incur any fees it would not have incurred anyway addressing Skaggs's non-frivolous 2005 allegations.

Likewise interconnected are Shepler's allegations concerning two trainers who harassed her in spring 2007, which help to illustrate CRST's failure to adjust its discipline based on severity of the harassment.  The court imposed partial fees for Shepler's first harasser based on insufficient severity, but denied fees for her second harasser (Kewley), ruling EEOC's allegations non-frivolous concerning Kewley's more severe harassment.  Yet when Shepler complained about both, CRST gave them both identical discipline—a "verbal warning."  CRST asked Shepler about both trainers in her deposition, XIV-Apx.3775, and her narrative inextricably intertwines both men.

EEOC's other claims are similarly intertwined.  Consequently, CRST has not, and cannot, meet its burden under *Fox* to demonstrate any fees that it incurred solely for a frivolous claim.

### C. CRST's fee records prevent it from establishing any work CRST did solely for a frivolous claim.

Even apart from the inextricable interconnection of the facts, the court abused its discretion when it excused CRST's failure to establish

what fees CRST incurred for a frivolous claim. "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended." *Hensley*, 461 U.S. at 437. Consequently, a party who seeks attorneys' fees "must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *Id.* at 441 (Burger, C.J., concurring). A prevailing defendant must, in addition, document that the fees requested were incurred solely for a frivolous claim. CRST's fee claim fails here because—as CRST admitted below—its fee records do not permit it to identify what fees CRST incurred for any EEOC claimant or group of claimants, other than Starke. R.416-6 at ¶ 2.

This is so largely because CRST addressed this lawsuit the same way EEOC filed it—as one claim with multiple victims. This Court ultimately rejected EEOC's one-claim view and remanded for individualized determinations of frivolousness and, if any, determinations under *Fox* of costs incurred solely for such claim(s). The manner in which CRST structured its defense, however, left it unable to satisfy its burden.

EEOC recognizes that "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection" and, consequently, that "trial courts … may use estimates in calculating and allocating an attorney's time." *Fox*, 563 U.S. at 838. The district court far exceeded this leeway, however. The court's per-claimant average captures a vast quantity of wholly-disallowed fees. The fact that the court declined to award the per-claimant average for a handful of claimants does not come even close to compensating for this overinclusion in calculating the fees imposed. The court's methodology simply strays too far beyond any flexibility that *Fox* allows.

## III. Assuming arguendo any claims are frivolous, CRST would be entitled to only $128,415.

Courts may award only "a reasonable attorney's fee." 42 U.S.C. § 2000e-5(k): *see Hensley*, 461 U.S. at 433, 434 (fees not "reasonably expended" must be excluded); *id.* at 441 (Burger, C.J., concurring) (attorney must establish that "time expended was necessary to achieve the result[]"). "[R]edundant, inefficient, or simply unnecessary [services] are not compensable." *Jenkins by Jenkins v. State of Mo.*, 127 F.3d 709, 716 (8th Cir. 1997).

Assuming any fees are warranted, CRST would be entitled to only $128,414.50. This is the amount CRST says it incurred for the presuit requirements motion (a sum that CRST calculated after this Court's 2014 ruling disallowing fees for challenging EEOC's satisfaction of presuit requirements). A-121-22. No other fees could be considered "reasonable" here. All of CRST's other fees were incurred to address EEOC's lawsuit as a whole or non-frivolous claimants (fees that cannot be shifted to EEOC), or after CRST knew that EEOC was identifying claimants in discovery.

In April 2008, EEOC served CRST with an amended list of class members, adding new names to those EEOC identified in its initial disclosures. At that point, CRST knew EEOC was seeking relief for victims identified in discovery and not during EEOC's presuit administrative process. Had CRST filed its motion at that time, it would have ended the "class" aspect of EEOC's lawsuit before depositions or other claimant-specific discovery began. But CRST unreasonably, and inexplicably, delayed filing its show cause motion until May 2009, thereby incurring thirteen months of unnecessary fees. *See Efron*, 675 F.3d at 47 (vacating fees where defendant failed to

undertake a simple, available route to dismissal despite knowledge of all relevant facts early on; describing fees incurred for extensive discovery and summary judgment as "inexplicable").

Of course, the real reason CRST waited until May 2009 to bring the show cause motion is clear. For the first nineteen months of litigation, and until the district court prompted CRST to think otherwise, CRST—like EEOC—reasonably believed that Title VII allows EEOC to identify claimants in discovery.

## CONCLUSION

Attorneys' fees should be reversed.

Respectfully submitted,

JAMES L. LEE
Deputy General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

ANNE NOEL OCCHIALINO
Acting Assistant General Counsel

s/Susan R. Oxford
Susan R. Oxford
Attorney
EQUAL EMPLOYMENT
  OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Fl.
Washington, D.C. 20507
(202) 663-4791 (phone)
susan.oxford@eeoc.gov

## Statutory Addendum

## 42 U.S.C. § 2000e-2 - Unlawful Employment Practices

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]

## 42 U.S.C. § 2000e-5 - Enforcement provisions

(a) The Commission is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful employment practice as set forth in section 2000e-2 or 2000e-3 of this title.

(b) Charges by persons aggrieved or member of Commission of unlawful employment practices by employers, etc.; filing; allegations; notice to respondent; contents of notice; investigation by Commission; contents of charges; prohibition on disclosure of charges; determination of reasonable cause; conference, conciliation, and persuasion for elimination of unlawful practices; prohibition on disclosure of informal endeavors to end unlawful practices; use of evidence in subsequent proceedings; penalties for disclosure of information; time for determination of reasonable cause Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer, employment agency, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer, employment agency, labor organization, or joint labor-management committee (hereinafter referred to

as the "respondent") within ten days, and shall make an investigation thereof. Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires. Charges shall not be made public by the Commission. If the Commission determines after such investigation that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the respondent of its action. In determining whether reasonable cause exists, the Commission shall accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law pursuant to the requirements of subsections (c) and (d) of this section. If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned. Any person who makes public information in violation of this subsection shall be fined not more than $1,000 or imprisoned for not more than one year, or both. The Commission shall make its determination on reasonable cause as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge or, where applicable under subsection (c) or (d) of this section, from the date upon which the Commission is authorized to take action with respect to the charge.

***

(e) (1) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that

in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

\*\*\*

(f) (1) If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d) of this section, the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court. The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission or the Attorney General in a case involving a government, governmental agency, or political subdivision. If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a

case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security. Upon timely application, the court may, in its discretion, permit the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, to intervene in such civil action upon certification that the case is of general public importance. Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending the termination of State or local proceedings described in subsection (c) or (d) of this section or further efforts of the Commission to obtain voluntary compliance.

**\*\*\***

(k) In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

**\*\*\***

**42 U.S.C.A. § 2000e-8 – Investigations, Inspections, Records, State Agencies**

(a) In connection with any investigation of a charge filed under section 2000e-5 of this title, the Commission or its designated representative shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation.

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 19,428 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook 14 point.

s/Susan R. Oxford
SUSAN R. OXFORD
Attorney
EQUAL EMPLOYMENT
  OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Fl.
Washington, D.C. 20507
(202) 663-4791 (phone)
susan.oxford@eeoc.gov

Dated: June 8, 2018

**CERTIFICATE OF SERVICE**

I, Susan R. Oxford, certify that I electronically filed the foregoing brief with this Court via the appellate CM/ECF system this 8th day of June, 2018. I also certify that all counsel of record are registered CM/ECF users and will be served the foregoing brief via the Court's appellate CM/ECF system.

s/Susan R. Oxford
SUSAN R. OXFORD
Attorney
EQUAL EMPLOYMENT
  OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Fl.
Washington, D.C. 20507
(202) 663-4791 (phone)
susan.oxford@eeoc.gov
